### JONES *v.* TITUS.

1. MORTGAGES—FORECLOSURE—FRAUD—BURDEN OF PROOF.
    In a suit to set aside a mortgage, to restrain its foreclosure, and to hold it invalid in the hands of defendant, assignee, for fraud in its inception, where defendant, by cross-bill, seeks affirmative relief by way of foreclosure, the burden is upon him to show *bona fides* in the assignment.

2. SAME—INDORSEE OF NOTE EQUITABLE OWNER OF MORTGAGE.
    When a note given with a mortgage was indorsed over to a third party it carried with it the equitable title to the mortgage.

3. NAMES—ASSUMED NAME—STATUTES.
    A bank cashier, assignee of a mortgage in his own name, was not precluded from foreclosing same by Act No. 101, Pub. Acts 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), requiring any person or persons doing business under an assumed name to file a certificate, etc., because the bank, to facilitate its bookkeeping, had devised a system of handling past-due paper by assigning it to the cashier as "Trustee

for Trust Mortgage Syndicate," where the testimony shows
that this name was used only as a memorandum, ap-
parently for the purpose of carrying the account and to
prevent the "charging off" of these items.

4. MORTGAGES—FRAUD—ASSIGNEE—BONA FIDES.

The finding of the court below that the bank, assignee of
the mortgage, was a holder in good faith and entitled to
foreclosure, *held*, supported by the record, although it is
disclosed that plaintiff was defrauded in the transaction
involving the making of the mortgage.

Appeal from Grand Traverse; Mayne (Frederick
W.), J. Submitted October 14, 1919. (Docket No.
40.) Decided December 23, 1919. Rehearing denied
April 10, 1920.

Bill by Elnora Jones against Leon F. Titus and an-
other to set aside a mortgage on the ground of fraud.
Defendant Titus filed a cross-bill for the foreclosure
of the mortgage. From a decree for defendants,
plaintiff appeals. Affirmed.

*Edward N. Barnard (E. A. Maher,* of counsel), for
plaintiff.

*Patchin & Duncan,* for defendants.

FELLOWS, J. November 22, 1913, the plaintiff, El-
nora Jones, and her son, Orvis Grant Jones, entered
into an agreement with one George B. Updegrove by
the terms of which they purchased from Updegrove
the formula and exclusive right to manufacture and
sell in the District of Columbia and the State of Mary-
land a certain preparation called "Earthquake," said
to be used for cleaning carpets, rugs and other fabrics.
The purchase price was $10,000; $3,000 to be paid
on the execution of the agreement, and the balance
when their profits on the sale of "Earthquake" had
amounted to the sum of $70,000. The plaintiff then
owned two pieces of real estate in Traverse City;
upon one of them was a mortgage for $500. To make

the payment of $3,000, plaintiff executed a mortgage to Updegrove for $1,500 upon one of the pieces, and upon the other a mortgage to Updegrove for $2,000, Updegrove agreeing to pay, and paying, the $500 mortgage thereon. It had been represented to plaintiff and her son that "Earthquake" was a new and patented preparation; much had been claimed for it by Updegrove; it was represented that the territory they bought had not been worked; that it was "virgin territory," and that much money could be made by the sale of the preparation. Plaintiff and her son went to the territory they had purchased and remained there a few months. It was the old story. The territory had been worked before; under other names the same preparation had been marketed; those who had bought it never bought again; as plaintiff expressed it, Updegrove "sold me nothing but a soft soap formula."

On December 2, 1913, Updegrove applied to the defendant Leon F. Titus, cashier and executive officer of the defendant First National Bank of Traverse City, for a loan of $1,500, offering the Jones mortgage for $2,000 as collateral. He had before that cashed several checks drawn on his own bank, but had had no other business dealings with the Traverse City bank. The abstract was examined, the security was known to Mr. Titus, it was ample, the loan was made, and the Jones note was indorsed over to the bank, and it and the mortgage were left as collateral to secure the loan. One thousand dollars was drawn by Updegrove that day and the balance later. The note was due in four months. It was not paid when due, and on April 6, 1914, Updegrove executed a formal assignment of the mortgage to the bank, and a request was made by him, and granted, for an extension of time. It would appear that the interest for the four months was at this time paid.

Upon Mrs. Jones' return to Traverse City she learned that Updegrove had sold the $1,500 mortgage to one Strickler, but she did not learn of the transfer of the $2,000 mortgage to the bank as collateral to the loan of $1,500. On May 2, 1914, she filed a bill in the circuit court for the county of Grand Traverse, in chancery, against Updegrove, setting up the transaction with him, the fraud perpetrated on her, the fact of the transfer of the mortgage to Strickler, that he had purchased it for a full consideration and in good faith, and asked an injunction against Updegrove to restrain him from disposing of the $2,000 mortgage. Before the case was heard the transaction between Updegrove and the bank came to plaintiff's knowledge, and, while the case was pending, and on November 27, 1914, she paid to the bank $120, the annual interest on her mortgage held by the bank as collateral to the Updegrove loan. She obtained and took a decree against Updegrove for the amount she would have to pay to Strickler and to the bank to obtain discharge of her mortgages, less the amount paid by Updegrove to discharge the $500 mortgage. This decree was dated October 1, 1915. Neither the bank nor Mr. Titus was made party to this suit.

The Updegrove note to the bank for $1,500 was not paid and the collateral, the Jones note and mortgage, was put up and sold; it was bid in by Mr. Titus, and on February 12, 1916, the bank executed an assignment of it to him in his individual name.

On April 23, 1917, this bill was filed. By it plaintiff seeks to set aside the mortgage given by her to Updegrove for $2,000, to restrain its foreclosure, and for a decree holding it invalid in the hands of defendants. By way of cross-bill, in his answer defendant Titus seeks foreclosure of the mortgage only to the extent of the amount of the loan to Updegrove with its accrued interest. The trial judge, who heard the

case, found that the bank and Mr. Titus took this mortgage as collateral to the Updegrove loan in good faith; that Mr. Titus, who acted for the bank in the transaction, had no knowledge or notice of plaintiff's equities, and a decree was entered dismissing plaintiff's bill and for foreclosure of the mortgage. A careful reading of this record satisfies us that the trial judge was quite right. There is ample evidence that Mrs. Jones has been defrauded by Updegrove. As defendant Titus is here seeking affirmative relief by way of foreclosure of the mortgage, the burden is upon him to show *bona fides* in the transaction. This we are satisfied he has done. He testified unequivocally to facts showing good faith in the transaction; all the books and records of the bank called for by plaintiff's counsel were produced and they corroborated his testimony, and upon this record there is nothing to refute it. Indeed, plaintiff's counsel insists that Mr. Titus was not sufficiently active and vigorous in attempting to discover Updegrove's fraud before he accepted the note and mortgage as collateral. Had plaintiff, before she executed these mortgages, exercised a tithe of the vigor to discover the fraud of Updegrove her counsel now insists the bank should have exercised before it made this loan in a regular business way upon ample security, it is highly improbable there would have been any occasion for this litigation. There is nothing upon this record that would justify us in concluding that this collateral was not taken by the bank in the ordinary course of business, nothing to indicate bad faith, nothing to impeach this paper in the hands of the bank, or of Mr. Titus. We do not overlook plaintiff's claim that when the mortgage and note were deposited as collateral a formal assignment of the mortgage was not executed, nor the intimation that when the formal assignment was made it was dated back. When the Jones note was indorsed over

to the bank, it carried with it the equitable title to the mortgage (*John Schweyer & Co.* v. *Mellon,* 196 Mich. 590) ; and there is no testimony in this record and nothing from which we could infer that the formal assignment was executed at any other date than the one it bears and the one all the witnesses testify was the actual date of its execution.

But it is urged by plaintiff's counsel that Mr. Titus dealt with this mortgage under an assumed name, that of "Trustee for Trust Mortgage Syndicate" in violation of Act No. 101, Public Acts of 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), and therefore cannot enforce it under repeated decisions of this court. The bank held among its assets certain past due real estate mortgages. It devised a system of its own for handling this past due paper and to facilitate its bookkeeping. The cashier gave to the bank a note with these past due mortgages as collateral signed by him as "trustee for trust mortgage syndicate." The testimony shows that this name was used only as a memorandum, apparently for the purpose of carrying the account, and possibly with the idea of preventing the "charging off" of these items. Without commending this plan of carrying past due paper as live assets, we do not perceive that the statute in question inhibited Mr. Titus, who took an assignment of this mortgage in his own name, and not in the name of, or as trustee for the trust mortgage syndicate, from foreclosing it. *Rossello* v. *Trella,* 206 Mich. 20.

While this record discloses that plaintiff was defrauded by Updegrove, against whom she has a decree, there is no testimony tending in any way to establish that defendants were a party to such fraud, and no testimony justifying the conclusion that they had any knowledge or notice of such fraud when they made the loan to Updegrove, or that the transaction smacks in any degree of bad faith on their part. Nor is any

reason shown why they, or either of them, should be required to assume any portion of plaintiff's loss from her unfortunate investment.

The decree of the court below will be affirmed, with costs to defendants.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.