*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DEARBORN,

      Plaintiff/Counterdefendant-
      Appellee,

v

BANK OF AMERICA,

      Defendant/Cross-Defendant-
      Appellee,

and

WEST DEARBORN PARTNERS LLC,

      Defendant/Counterplaintiff/Cross-
      Plaintiff-Appellant.

UNPUBLISHED
February 12, 2019

No. 339704
Wayne Circuit Court
LC No. 15-012788-CH

Before: STEPHENS, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

      Defendant/Counterplaintiff/Cross-Plaintiff/Appellant, West Dearborn Partners, LLC ("West Dearborn"), appeals an order quieting title to certain property (or "Parcel C"), in favor of Plaintiff/Counterdefendant/Appellee City of Dearborn ("the City") and against any interests of West Dearborn and Defendant/Cross-Defendant/Appellee Bank of America ("BOA").[1]

---

[1] Though listed as an appellee, BOA has not filed a notice of appearance and is not participating in this appeal.

# I. BASIC FACTS

On April 23, 2003, the City and an entity known as West Village Commons, LLC ("West Village[2]") entered into a development agreement whereby West Village would develop certain property for residential and office use. In exchange, the City agreed to procure all the necessary property for construction and construct parking garages. The City acquired the property and constructed the parking structures and, on May 9, 2005, sold Parcel C, as well as nearby Parcel A-3, to West Village by covenant deed, which included a declaration of covenants running with the land and its development. On May 11, 2005, BOA's predecessor, Standard Federal National Association ("Standard Federal"), and West Village entered into a collateral assignment of developer's rights whereby Standard Federal loaned West Village $2,975,000 in exchange for a mortgage on the property.

West Village failed to fulfill its obligations, resulting in protracted litigation in *City of Dearborn v Burton-Katzman Dev Co, Inc,* Wayne County Circuit Court Case No. 09-001342-CK.[3] West Village filed for Chapter 7 bankruptcy in the United States District Court for the Eastern District of Michigan, Case No. 10-66748-MBM. On October 5, 2011, the bankruptcy court entered an order directing the Trustee to abandon the property via quitclaim deed to the City. Bankruptcy Judge Marci B. McIvor's order provided:

> The Trustee is directed to promptly abandon the Debtor's real property . . .via quitclaim deed to the City of Dearborn, in form reasonably satisfactory to title City of Dearborn and consistent with this Order, pursuant to sections 105(a) and 554(b) of the Bankruptcy Code. Such abandonment shall not impair, and the Property shall remain subject to, all claims, liens, interests, rights and obligations *of record*. [Emphasis added.]

Thereafter, in consideration of $1, the City received Parcel C via quitclaim deed on October 17, 2011. The deed was recorded on October 20, 2011.

The City brought a quiet title action against BOA, arguing that BOA's failure to complete the development plans in accordance with the development agreement, covenant deed, and restrictive covenants resulted in an abandonment of its interest. In response, BOA indicated that it did not claim nor did it hold an interest in the subject property because it had assigned its interest to West Dearborn on March 31, 2011. The assignment was signed by BOA Senior Vice President Mark Mokelke.[4]

---

[2] Though similarly named, there is no connection between West Dearborn and West Village.

[3] See *City of Dearborn v Burton-Katzman Dev Co Inc*, unpublished opinion of the Court of Appeals, issued December 18, 2014 (Docket Nos. 309758 and 313213).

[4] Although the assignment of mortgage is made in favor of "West Dearborn Partners, LLC" on the cover page, the signature page shows the assignee as "West Village Partners, LLC." Again, West Dearborn and West Village are separate and unrelated entities.

As a result of BOA's answer, the City filed an amended complaint, adding West Dearborn as a defendant. The City alleged that the March 31, 2011, assignment to West Dearborn was never recorded and, therefore, West Dearborn failed to protect whatever interest it had in the property. As to BOA, the City alleged that, regardless of the assignment, BOA had relinquished its interest in Parcel C when it filed a discharge of mortgage with the Wayne County Register of Deeds on August 14, 2015. The discharge was the result of a separate lawsuit regarding the separate, but related, Parcel A-3. After a tax forfeiture in 2014, Parcel A-3's new property owner sued BOA for quiet title. Rather than cite to its lack of interest in the property, BOA vigorously defended itself as mortgagee. The trial court in that case ordered that BOA discharge its interest as to Parcel A-3. Ultimately BOA discharged its mortgage as to *both* Parcel A-3 and Parcel C.

West Dearborn filed an answer and counterclaim on December 28, 2015. West Dearborn argued that recording the March 31st assignment was of no consequence where the City had *actual notice* of West Dearborn's interest. West Dearborn alleged that the bankruptcy proceeding demonstrated that the City was well aware of West Dearborn's interest. As such, the City was not a bona fide purchaser and West Dearborn had superior rights to the property.[5]

Believing that the bankruptcy order would be of significant interest, West Dearborn filed a motion to confirm the scope of the bankruptcy court's order in the bankruptcy court. On December 21, 2016, Bankruptcy Judge McIvor denied West Dearborn's motion to confirm the scope of its previous order. Shortly thereafter, BOA, the City, and West Dearborn each filed competing motions for summary disposition.

BOA continued to maintain that it had no claim to the property. Still, BOA felt compelled to respond to the City's questioning of the veracity of the March 2011, assignment to West Dearborn. Specifically, BOA indicated that its employee, Sara Allen, as a result of an error, executed and caused to be recorded a discharge of construction mortgage as to Parcel C. For that reason, BOA executed a Confirmation, Release, and Waiver of Claim of Right to Real Property. Although BOA claimed no interest in Parcel C, it indicated that the parties were nevertheless unable to agree to a consent judgment. BOA argued that the validity of the assignment had no bearing on keeping BOA as a party.

The City argued that any interest West Dearborn had in Parcel C was extinguished by the bankruptcy court due to West Dearborn's failure to record the assignment and any harm to West Dearborn from the bankruptcy court's order was due to its own negligence or deliberate decision not to record the assignment. Although West Dearborn implied that it could not file earlier because it was unable to locate Mokelke to obtain his acknowledgement on the assignment, Mokelke's contact information would have remained the same until his May 1, 2012 transfer to California. Sara Allen was still with his group and had the ability to reach him. The City further argued that, even if the bankruptcy court's order did not extinguish West Dearborn's interest, BOA's August 2015 discharge did. The City also argued that the acknowledgments in the assignment were invalid. Finally, the City argued that equity demanded that West Dearborn's

---

[5] West Dearborn recorded the assignment on December 17, 2015.

interest be extinguished or rescinded based on West Dearborn's unreasonable and unjustifiable delay in recording the assignment over four years after it was signed.

West Dearborn noted that its attorney, Scott Lites, testified that he had to track down Mokelke to get his signature acknowledged in order to record the assignment and, because Mokelke had been transferred, Lites was unable to get the requisite acknowledgement page until July 2014. Lites didn't feel any real urgency nor did he feel compelled to keep track of his efforts because, as far as he was concerned, the City acknowledged West Dearborn's interests during the bankruptcy proceedings. When Lites recorded the assignment he knew that there was an error in the assignment – West Village instead of West Dearborn as signatory – but made no attempt to correct it because an assignee is not even required to sign the assignment; instead, it was BOA's form and BOA was the assignor.

West Dearborn explained that it had decided to let certain condominium units (Parcel A-3) "go down for unpaid property taxes." BOA's representative, Sara Allen, testified that, due to a brain injury, she had forgotten about the March 31, 2011, assignment when she drafted the discharge that was ordered in the separate quiet title action regarding Parcel A-3. Allen acknowledged that there was nothing for BOA to discharge, given the transfer to West Dearborn in 2011. An affidavit of scrivener's error was filed on March 31, 2016, indicating that BOA didn't mean to include Parcel C in the mortgage discharge.

West Dearborn argued that its interest had priority over the City's fee interest because the City was not a bona fide purchaser, having paid only $1 for Parcel C just months after West Dearborn paid $150,000. More importantly, West Dearborn argued that the City had actual notice of the assignment, as demonstrated by the bankruptcy court documents and transcripts. West Dearborn argued that actual knowledge prevented the City from claiming that it is a good faith purchaser under MCL 565.29.

Even if the bankruptcy's order was read as the City would like, West Dearborn maintained the pre-existing BOA mortgage *was* a lien or interest of record. West Dearborn argued: "the term 'interest' here as set forth both in the Order and Deed can clearly be construed to relate to the Mortgage itself and not as to **who** happens to hold the interest at any particular point in time." The mortgage was given to the mortgagee and its assigns and "[s]ince the Mortgage is joined at the hip with the Note, and since West Dearborn was the holder of the Note during the Bankruptcy, it is also the holder of the Mortgage and survived the Bankruptcy." West Dearborn believed that the City took the property subject to the mortgage and assignment, of which it had actual knowledge. Moreover, West Dearborn asserted that there was no law requiring an assignment be recorded unless the property was to be foreclosed by advertisement.

Finally, West Dearborn argued that BOA's subsequent 2015 discharge had no effect on Parcel C because BOA had nothing to discharge.

The trial court granted the City's motion for summary disposition and denied BOA's and West Dearborn's motions for summary disposition, finding that any interest West Dearborn had acquired was extinguished by the bankruptcy court's order and West Dearborn's failure to record the assignment. The trial court declined to reach the alternative arguments that BOA's 2015 discharge extinguished the assignment or that deficiencies in the assignment rendered the

assignment invalid. The trial court denied West Dearborn's motion for reconsideration and West Dearborn now appeals as of right.

## II. ANALYSIS

On appeal, West Dearborn argues that the trial court erred in granting the City summary disposition.

"This Court reviews de novo a circuit court's decision whether to grant or deny summary disposition." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012).

West Dearborn argues that the bankruptcy court's order did not extinguish its interest in Parcel C because the original 2005 mortgage remained a lien "of record." West Dearborn argues that, as the assignee, it stood in the place of BOA, the assignor, and priority for the assignment related back to date of the original mortgage. West Dearborn cites *Coventry Park Homes Condo Ass'n v Federal Nat'l Mtg Ass'n*, 298 Mich App 252; 827 NW2d 379 (2012) and *Wilson v Campbell*, 110 Mich 580; 68 NW 278 (1896), for the principle that "an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor" and "[w]hen a mortgage is assigned, the assignee, for all beneficial purposes claimed under it by him, becomes a party to the mortgage, and stands in the place of the mortgagee." *Coventry*, 298 Mich App at 256-257, citing *Wilson v Campbell*, 110 Mich at 588-589. West Dearborn also cites *Equitable Trust Co v Milton Realty Co*, 263 Mich 673, 676; 249 NW 30(1933), arguing that when the note was sold and transferred to West Dearborn, the mortgage was automatically held by West Dearborn. "A transfer or assignment of the obligation operates as an assignment of the mortgage . . ." *Id.*, citing *Jones v Titus*, 208 Mich 392; 175 NW 257 (1999).

West Dearborn argues that nothing in the bankruptcy court's order impacted its right as an assignee of BOA. However, West Dearborn's reliance on *Coventry* is misplaced in this case. *Coventry* concerned the interpretation of the Condominium Act and the priority of mortgages, not the interpretation, relevancy, and effect of a bankruptcy court's order. And, while generally an assignment of the note includes a transfer of obligation under the mortgage, the situation before us is particularly unique. West Dearborn paid BOA roughly 10% of what was due on the mortgage and did so while the property was subject to the bankruptcy proceedings. West Dearborn took a significant risk in seeking the assignment when it did. While the 2005 mortgage itself was still "of record" at the time of the bankruptcy proceeding, the assignment giving West Dearborn any interest was not. West Dearborn acknowledged as much when, in response to the Trustee's request to sell the property, West Dearborn requested:

> West Dearborn Partners LLC wishes for any Order of Sale to specifically provide that such sale of property is subject to not only the claims, liens and interest of record described in paragraph 9 of the Motion [to sell], but also subject to the interest of Bank of America now held by West Dearborn Partners LLC as assignee of Bank of America, including but not limited to the waived right of redemption.

West Dearborn knew its unrecorded interest was at risk when it asked that any sale of property by the Trustee be subject not only to interests of record but also subject to West Dearborn's unrecorded interest. The bankruptcy court's order effectively extinguished any unrecorded interest when it later ordered the Trustee to abandon the property:

> The Trustee is directed to promptly abandon the Debtor's real property . . . via quitclaim deed to the City of Dearborn, in form reasonably satisfactory to title City of Dearborn and consistent with this Order, pursuant to sections 105(a) and 554(b) of the Bankruptcy Code. Such abandonment shall not impair, and the Property shall remain subject to, all claims, liens, interests, rights and obligations *of record*. [Emphasis added.]

The bankruptcy court's order itself required the assignment be recorded in order to have continued validity.

Even if we accepted West Dearborn's position that it stood in BOA's shoes and had no obligation to record the assignment to protect its interest, then West Dearborn stood in BOA's shoes when BOA later discharged the mortgage in 2015 as a result of a separate quiet title proceeding regarding Parcel A-3. West Dearborn argues that the discharge was invalid because BOA, having no interest in Parcel C, had nothing to discharge. West Dearborn wants to be relieved of any obligation to notify the world of its interest in Parcel C and yet be protected when chaos ensues. West Dearborn provides no satisfactory explanation for why it failed to record the assignment for over 4 ½ years.

West Dearborn also raises equitable arguments. First, it claims that the City should be estopped from taking an inconsistent position from the position the City took in the bankruptcy court. West Dearborn argues that the City had actual notice of the 2011 assignment and West Dearborn's interest in the property, as it indicated in the bankruptcy court, so it should not be allowed to now argue that West Dearborn had to further perfect its already perfected interest. It believes the City's version of what was required by the bankruptcy court order is invalidated by the City's own admissions.

West Dearborn cites *Mertz v Mertz*, 311 Mich 46, 55; 18 NW2d 271 (1945), holding that equitable estoppel rests in broad principles of justice. "One may not take contradictory positions in asserting a right in court, if the assertion of plaintiff's right in the first case involves a negation of the right as claimed in the second case." *Id.* at 56. Permitting a party to do so "would make a mockery of legal proceedings, and be a travesty upon justice." *Id.* at 58. "Judicial estoppel prevents a party from taking a position in a later proceeding that is inconsistent with a position that party took successfully in a prior proceeding." *Dykema Gossett, PLLC v Ajluni*, 273 Mich App 1, 16; 730 NW2d 29 (2006), aff'd in part, vacated in part on other grounds 480 Mich 913 (2007). However, "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true." *Id.*, quoting *Paschke v Retool Industries*, 445 Mich 502, 509–510; 519 NW2d 441 (1994).

In its August 16, 2011 objections to the Trustee's proposal to sell the property, the City noted:

18. The Sale Motion purports that the property will be sold subject to "all claims, liens, and interests of record without limitation," including all terms and conditions of the Covenant Deed and the Development Agreement. Sale Motion at ¶ 9. However, if the proposed sale were approved, the property would be sold **in contravention of section 3.0l(e) of the Development Agreement and paragraph I(B) of the Covenant Deed**, since it would be sold prior to completion of the development of Area C by Developer.

19. In the Sale Motion, [BOA] is identified as the holder of a mortgage on the Area C parcel. However, upon information and belief, [BOA] sold the note and mortgage associated with Area C to West Dearborn Partners, LLC ("West Dearborn Partners") at the end of March 2011.

\* \* \*

21. Notably, no explanation is provided by West Dearborn Partners as to why the documents effectuating the sale and transfer of the note and mortgage to West Dearborn Partners do not appear of record almost five months after the transaction.

Then, at the October 4, 2011 bankruptcy hearing, the City's attorney indicated:

The other thing I wanted to highlight, your Honor, is the proposed order here. Our proposed order states very clearly in paragraph 2, among other things, that the abandonment – first of all, it contemplates a quit claim deed, and it says that such abandonment shall not impair and the property shall remain subject to all claims, liens, interests, rights, and obligations of record. The West Dearborn Partners, the mortgagee -- the holder of the mortgage and the note on the property, has indicated it wants to make sure that the property is subject to its rights and interests. This order already does that. So the rights of the holder of the mortgage are not prejudiced in any way by the abandonment here, and no other party other than the trustee has objected to the abandonment. And the trustee has just indicated that there is no value to the property to the estate, so we would suggest that our motion is proper, and we would ask that it be granted.

West Dearborn's position is problematic because (1) when considered in context, the City's current position is not inconsistent with its prior position; and (2) the bankruptcy court did not rely on or accept any alleged statements as true before effectuating its order of abandonment. The City certainly questioned why the assignment had not been recorded. And the bankruptcy court's order requiring that the property be abandoned had nothing to do with the validity of the assignment; instead, the focus was on whether the property was a burden to the bankruptcy estate. That was part of the reason the bankruptcy court declined to clarify its order and was content to let the order stand on its own.

Second, West Dearborn claims that the City's position regarding the unrecorded mortgage is inconsistent with the City's position regarding an unrecorded development agreement. The City had previously successfully argued that the unrecorded development

agreement applied to all future assigns, which stood in stark contrast with the City's position that the assignment did not survive the bankruptcy court's order. However, the mortgage documents expressly referenced the development agreement whereas the mortgage could not specifically mention and refer to an assignment that did not yet exist. More to the point, this case has nothing to do with the validity of the development agreement and, therefore, West Dearborn's argument is wholly irrelevant.

West Dearborn next argues that it had priority over the City's fee interest because under MCL 565.29, the City was not a good faith purchaser. MCL 565.29 provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

West Dearborn points to the fact that the city paid only $1 for Parcel C and MCL 565.34 defines "purchaser" as one who pays valuable consideration. West Dearborn also indicates that the City also had actual knowledge of the assignment prior to acquiring its interest. However, as previously stated, this case is unique. It is not a matter of priority as between the City and West Dearborn. Instead, the case is whether the bankruptcy court's order extinguished West Dearborn's unrecorded interest in the property.

West Dearborn further argues that the assignment was not fatally defective and that any alleged defect did not serve to defeat West Dearborn's interest. Although the City alleged that the assignment was defective, this was not the basis of the trial court's decision granting summary disposition in the City's favor. The trial court noted: "The deficiencies in the assignment as noted by the City of Dearborn, are concerning. However, again, the Court need not make a ruling on the validity of the assignment because any interest held by West Dearborn Partners was extinguished by the bankruptcy court due to [West Dearborn's] continued failure to correct the deficiencies and promptly record this assignment, their assignment." This Court's review should be limited to issues actually decided by the trial court. *Heydon,* 275 Mich App at 278; *Love*, 270 Mich App at 566 n 2.

Finally, West Dearborn argues that equity compels reversal because allowing the City to own the property in fee and free from West Dearborn's interest would result in a windfall to the City. However, West Dearborn fails to account for its own inexplicable failure to record the assignment more than 4 ½ years, after receiving it March 2011. As the trial court noted: "[West Dearborn] clearly had . . . actual notice of the bankruptcy proceeding. [West Dearborn] filed a limited objection and Counsel for [West Dearborn] was present at the hearing. It is not the role of the Court to protect sophisticated parties and their Counsel from their own mistakes or deliberate actions taken to their detriment."

Affirmed. As the prevailing party, plaintiff/counter-defendant may tax costs. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel