*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAWN REO, LLC,

        Plaintiff-Appellant,

v

WILLIAM R. MURPHY,

        Defendant-Appellee.

UNPUBLISHED
October 15, 2019

No. 342701
Emmet Circuit Court
LC No. 06-009259-CK

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this appeal involving the assignment of a money judgment, plaintiff appeals by leave granted an order denying its motion for summary disposition, which was based on MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On September 5, 2004, Fifth Third Bank ("Fifth Third") loaned $499,952.00 to defendant, in exchange for a promissory note. On February 28, 2005, Fifth Third loaned defendant a further $25,000.00, in exchange for another promissory note. According to the copies of the notes attached to the complaint, each note was secured by an interest in defendant's property, although the notes did not explicitly identify any specific property. Nevertheless, it is undisputed that the notes were secured, at least in relevant part, by a mortgage on defendant's home and commercial real property. As will be discussed, mortgages on defendant's property in favor of Fifth Third already existed, possibly because defendant had previously "done a number of short term loans with this bank" in an apparently revolving manner.

Fifth Third commenced the instant action on March 31, 2006, alleging that defendant was in default on both notes. Fifth Third moved for summary disposition, seeking a money judgment in the amount of $517,190.98 plus interest. On September 13, 2006, the trial court entered a consent judgment in favor of Fifth Third and against defendant in the amount of $579,170.96 ("the 2006 Judgment"). The order of judgment stated that it would "earn interest at applicable statutory rates." The order also stated that "A note or other written evidence of indebtedness has been filed with the clerk for cancellation." However, the order does not specify the note, notes,

-1-

or "other written evidence of indebtedness;" and the lower court record file does not contain any other indication of any such cancellation.

Fifth Third made efforts to collect on the 2006 Judgment but was unsuccessful for reasons not clear from the record.[1] We observe that the various documents described below were never coherently organized in their entirety by any party, and we do not fault the trial court for failing to "scour the record." See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 378; 775 NW2d 618 (2009). Defendant contends that, notwithstanding the other transactions that have occurred in or relevant to this matter, he has consistently been making payments to Fifth Third on at least one of the mortgages. He further contends that Fifth Third had advised him that his payments were being applied to the 2006 Judgment.

On June 12, 2007, Fifth Third executed a "limited power of attorney" appointing Lehman Brothers Bank FSB (Lehman Bros) as attorney-in-fact "pursuant to" an otherwise unidentified "certain Asset Sale Agreement . . . dated June 12, 2007." Also on June 12, 2007, Fifth Third executed a "bill of sale," apparently referencing the same Asset Sale Agreement, conveying all of its rights and interests in two loans from defendant to "Capital Crossing, a Division of Lehman Brothers Bank, FSB." Capital Crossing had merged with Lehman Bros in February 2007.[2] The June 12, 2007, power of attorney and bill of sale were signed by Mike Waltz as Assistant Vice President of Fifth Third. We have not found a copy of the Asset Sale Agreement itself in the record. However, the schedule attached to the bill of sale unambiguously includes both the September 5, 2004, and February 28, 2005, notes by identification number.

Two days later, on June 14, 2007, Fifth Third executed an "assignment of judgment and related rights" that bore the caption and lower court docket number for the instant case. That assignment "hereby sells, transfers, assigns, and sets over to [Lehman Bros], without recourse, representation, or warranty, express or implied, all of [Fifth Third's] right, title and interest in and to the Judgment in and to the Judgment in the above captioned case." The assignment of judgment was signed by "Maureen Babcock, Authorized Agent." Apparently, Babcock was Assistant Vice President of Lehman Brothers, acting as attorney-in-fact for Fifth Third pursuant to the power of attorney. Also on June 14, 2007, Fifth Third executed two "assignments of

---

[1] According to an August 2007 "report of collection activity under order to seize property," an order to seize defendant's property was not satisfied because "Def. has hid/disposed of personal prop. Unable to locate – Plain. did not confirm receipt of $22,000 payment on account."

[2] *Decision relative to the application of Lehman Brothers Bank, FSB, Wilmington, Delaware and certain related parties to acquire Capital Crossing Bank, Boston, Massachusetts*, Decision of Massachusetts Division of Banks and Board of Bank Incorporation, decided February 13, 2007, available at <https://www.mass.gov/decision/decision-of-february-13-2007-0>; *Decision relative to the application of Lehman Brothers Bank, FSB, Wilmington, Delaware to merge with Capital Crossing Bank, Boston, Massachusetts in a multi-step transaction*, Decision of Massachusetts Division of Banks and Board of Bank Incorporation, decided February 13, 2007, available at <https://www.mass.gov/decision/decision-of-february-13-2007>. Capital Crossing is also referred to as Capital Crossings.

mortgage" to Lehman Bros, one conveying an "open end" or "future advance" mortgage given by defendant on July 21, 2003, and the other conveying a separate mortgage given by defendant on April 30, 2004. The assignments of mortgage were also signed by Babcock.

In October 2007, a notice of judgment lien against defendant's "current or future interest in real property" was entered by "Capital Crossings as an Assignee of Fifth Third Bank." The notice specified that the balance then due was $662,909.06. On December 5, 2008, Lehman Bros executed an "assignment of judgment and related rights" that assigned its rights to the judgment in this matter to Cranberry Financial, LLC ("Cranberry"). On September 29, 2008, Capital Crossing assigned to Cranberry both of the above mortgages previously conveyed by Fifth Third. All three assignments referenced an Asset Sale Agreement dated September 19, 2008, but no copy of that agreement appears to have been filed.

On January 5, 2010, Fifth Third executed another "assignment of judgment and related rights" conveying its interest in the judgment in this matter to "Aurora Bank FSB [("Aurora")] f/k/a Lehman Brothers Bank FSB." Aurora was, at that time, actually the same entity as Lehman Bros.[3] The assignment was signed by Timothy Winkels, assistant vice president of Fifth Third. On January 11, 2010, Cranberry conveyed to Aurora its interest in both of the mortgages previously conveyed by Fifth Third. On February 8, 2011, Cranberry executed an assignment of judgment transferring its interest in the 2006 Judgment to Aurora Bank, FSB ("Aurora"). The assignment stated that it was effective as of November 11, 2009.

In October 2011, Aurora filed a motion to appoint a receiver for defendant's properties. Defendant argued that Aurora had not shown that it had a right to have a receiver appointed because Aurora had not established that it was a valid assignee of the 2006 Judgment. Further, defendant argued that the promissory notes securing the mortgages had been cancelled by the 2006 Judgment, and the promissory notes provided to the court by Aurora were not consistent with the amounts of the notes underlying the 2006 Judgment. The trial court concluded that Aurora had not adequately established that the documents it had provided were sufficient for appointment of a receiver to be appropriate.

On March 30, 2012, Aurora executed an "assignment of judgment" assigning the 2006 Judgment to plaintiff. The assignment referenced a "Commercial Loan and REO Purchase Agreement dated February 28, 2012, between" Aurora and plaintiff, but that agreement does not appear to have been filed. Contemporaneously, Aurora executed an "assignment of open-end mortgage" conveying to plaintiff any interest in a mortgage originally from defendant to Fifth

---

[3] "Lehman Brothers Bank, FSB, changed its name to Aurora Bank, FSB, effective April 1, 2009." *Delaware Office of the State Bank Commissioner Annual Report*, 2009, p 11, available at <https://banking.delaware.gov/wp-content/uploads/sites/73/2017/02/Annual_Report_2009.pdf>. See also, *Aurora Loan Services, LLC v Kmiecik*, 2013 IL App (1st) 121700; 992 NE2d 125, 135 (2013); *Edwards v Mortgage Electronic Registration Systems, Inc*, 154 Idaho 511, 514 n 1; 300 P3d 43 (2013); *In re Lyn*, 483 BR 440, 445 n 1 (Bankr Del, 2012).

Third.[4] The assignment identified the July 21, 2003, mortgage by liber and page number where it had been recorded in Emmet County. Any further fate of the April 30, 2004, mortgage is not obviously disclosed by the record. Plaintiff later filed a motion for access to the properties at issue, in which it argued that defendant lacked standing to challenge "the various assignments."

In June 2017, plaintiff filed a motion for appointment of a receiver for the properties at issue. Plaintiff argued that it had the authority to request a receiver pursuant to the mortgages it had been assigned, and because it was the assignee of the 2006 Judgment. According to plaintiff, the validity of its assignment could be based on either the chain of assignments commencing in 2007 from Fifth Third to Lehman Bros to Cranberry to Aurora to plaintiff, or based on the "additional assignment" in 2010 "directly from Fifth Third" to Aurora to plaintiff. In response, defendant argued that plaintiff had not provided the court with an assignment of any mortgage to plaintiff, and that the promissory notes underlying the 2006 Judgment were cancelled by Fifth Third when the 2006 Judgment was entered. Defendant also claimed that he had made regular monthly payments on his residential mortgage to Fifth Third and that Fifth Third had advised him "on two occasions" that this monthly payment was being applied to the 2006 Judgment.

The circuit court denied plaintiff's motion for a receiver and also rejected plaintiff's argument that defendant lacked standing to challenge the validity of the assignments. The court stated that plaintiff had failed to provide the court with any "sworn testimony or affidavits . . . to verify the validity of its alleged interest" in the 2006 Judgment. Additionally, the court noted that plaintiff had failed to provide any assignments of the underlying mortgage or other evidence demonstrating that it was the current assignee of the mortgage, "such as a title search, mortgage title insurance policy or foreclosure commitment." The court suggested that an evidentiary hearing might be necessary before the court could appoint a receiver, noting the "harsh nature of a receivership" and the caution with which a court must proceed "before a court exercises its inherent equitable authority to appoint a receiver," citing *Hofmeister v Randall*, 124 Mich App 443, 447; 335 NW2d 65 (1983).

In January 2018, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that it was the valid assignee of the 2006 Judgment based on the 2010 assignment of judgment from Fifth Third to Aurora, and the subsequent assignment from Aurora to plaintiff on March 30, 2012. Plaintiff also claimed that "the Assignment of the Judgment is sufficient to assign the subject Mortgage without any further documentation," citing *Jones v Titus*, 208 Mich 392; 175 NW 25 (1919), but it had provided additional documents with its motion to show that it had also been assigned the mortgages by Aurora. Additionally, plaintiff renewed an argument that defendant did not have standing to attack the validity of the assignment between Aurora and plaintiff because he was not a party to the assignment.

The court denied plaintiff's motion for summary disposition, finding that plaintiff had failed to resolve the deficiencies in the evidence it had previously presented in order to prove that

---

[4] Apparently, Lehman Bros and Aurora split a few months later. See *Segelstron v Citibank, NA*, 76 F Supp 1, 7 (2014).

it was the valid assignee of the 2006 Judgment. The court disagreed with plaintiff's claim that the 2010 assignment to Aurora by Fifth Third resolved any questions as to whether plaintiff was the proper assignee. It noted that plaintiff had previously submitted documents to show that Fifth Third had transferred its interest in the 2006 Judgment to Lehman Bros in 2007 and therefore, "in 2010 when it gave the new assignment direct to Aurora, it didn't have anything to assign." This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to "determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id.* at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). All legitimate inferences must be drawn in favor of the nonmoving party. *Coblentz v City of Novi*, 475 Mich 558, 567-568; 719 NW2d 73 (2006). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). We also review de novo questions of statutory and contractual interpretation, and whether a party has standing. *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008).

## III. STANDING

Plaintiff argues that the trial court erred by failing to conclude that defendant lacked standing to challenge the assignments of the 2006 Judgment to plaintiff and its predecessors in interest. We disagree.

To have standing, a party must either have a cause of action conferred by law, or the party must have "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). Standing is not based on whether the party's claim has any substantive merit. *Id.* at 356, 359. Plaintiff correctly observes that a party who has not suffered any personal injury or threat of personal injury generally lacks standing to assert a claim on behalf of third parties. See *People v Rocha*, 110 Mich App 1, 16-18; 312 NW2d 657 (1981), and *Feiger v Comm'r of Ins*, 174 Mich App 467, 471; 437 NW2d 271 (1988). Thus, the promisor of a note lacks standing to challenge a fraudulent transfer of the note from one holder to another, if no fraud was perpetrated against the promisor and it makes no difference to whom the promisor makes payment. *Bowles v Oakman*, 246 Mich 674, 678-680; 225 NW 613 (1929).

We find *Bowles* subtly but critically distinguishable. In *Bowles*, the plaintiff had title to the note, and the defendant's position was that the plaintiff obtained that title by way of a fraud perpetrated by the plaintiff against another person. *Bowles*, 246 Mich at 275. The case does not hold that a promisor on a note may never challenge whether a person seeking payment on the note is, in fact, a valid holder of the note. Here, defendant does not appear to be claiming that

any of the assignments were fraudulent. Rather, defendant contends that defects in the assignments show that plaintiff does not have *any* title to enforce. The promisor of a note may not have standing to challenge how a holder of a note gained title to the note, but the promisor *does* have standing to challenge whether a party demanding payment is a holder of the note at all. The possibility of inconsistent verdicts from different claimants to the note, and therefore independent judgments requiring payment of the same debt twice, certainly constitutes the kind of "special injury or right, or substantial interest" that confers standing. See *Livonia Prop Holdings, LLC v 12840-12976 Farmington Rd Holdings, LLC*, 399 Fed Appx 97, 102 (CA 6, 2010).[5]

We reiterate that standing is unrelated to the substantive merits of a claim or defense. *Lansing Sch Ed Ass'n*, 487 Mich at 356, 359. We agree with plaintiff that defendant lacks standing to assert any claim on behalf of any of the banks as against each other. However, defendant has standing to challenge whether plaintiff is actually a holder of any note or other indebtedness for which defendant might be liable, especially because he has raised the possibility of being required to pay the same debt twice. We therefore affirm the trial court's holding that defendant has standing in this matter.

### III. GENUINE ISSUE OF MATERIAL FACT

Plaintiff asserts that the circuit court erred by failing to grant its motion for summary disposition because there was no genuine issue of material fact that plaintiff was the valid assignee of the 2006 Judgment. We disagree.

As should be clear from the facts discussed above, the assignments, at face value, clearly establish two independent lines of transfers from Fifth Third to plaintiff, especially given that at all relevant times, Capital Crossings, Lehman Bros, and Aurora were the same entity. We are unconcerned by the mere fact that two chains of title are presented. The 2007 conveyances and the 2010 conveyance from Fifth Third were to the same entity, and pleading alternative chains of title is entirely proper. MCR 2.111(A)(2)(a). Presuming the validity of the assignments, by 2012, Aurora must have held title to everything conveyed by Fifth Third by one chain or the other. Thus, pursuant to Aurora's conveyance to plaintiff, plaintiff facially appears to be the holder of all interest in the 2006 Judgment originally held by Fifth Third.

Nevertheless, the facial validity of the chains of title from Fifth Third to plaintiff aside, defendant raises numerous specific challenges to specific assignments. Some are irrelevant, such as complaints about alternative chains as noted above; or based on a misunderstanding of the nature of the relationship between Capital Crossings, Lehman Bros, and Aurora. However, other challenges are more serious, such as whether conveyances signed by Babcock pursuant to the limited power of attorney were within the scope of her power, the significance of certain documents referenced in but not included with some of the conveyances, the fact that some of the assignments were not signed by a representative of the assignee, or the significance of the

---

[5] We are not bound by decisions from lower federal courts, but we find *Livonia Prop Holdings* persuasive. See *Abela v General Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

2006 Judgment purporting to have cancelled an unidentified note or evidence of indebtedness, and the fate of the April 30, 2004, mortgage. We are concerned by the haphazard arrangement of the documentary evidence, and we find the two affidavits provided by plaintiff conclusory and unhelpful. We do not express any conclusion regarding the validity of the assignments, but rather that an evidentiary hearing would be the proper way to resolve any doubts.[6] Under the circumstances, we cannot find error in the trial court's conclusion that the matter cannot be resolved on the present state of the record and must proceed to an evidentiary hearing. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); see also *Jimkoski*, 282 Mich App at 5.

We briefly address plaintiff's argument that the trial court erred by failing to accept the notarized assignments as presumptively valid and true. In *Settles v Detroit City Clerk*, 169 Mich App 797, 806; 427 NW2d 188 (1988), this Court held that former MCL 55.113[7] "gives presumptive validity to the truth of facts within an instrument to which a notary public affixes his or her seal." At the time, former MCL 55.113 provided, in relevant part, that "the certificate of a notary public, under his hand and seal of office, of official acts done by him as such notary, shall be received as presumptive evidence of the facts contained in such certificate." Similarly, current MCL 55.307 provides, in relevant part, that "the certificate of a notary public of official acts performed in the capacity of a notary public, under the seal of office, is presumptive evidence of the facts contained in the certificate."

We think *Settles* misread the statute, which refers only to facts in the notarial *certificate*. A "notary's certificate" is "[a] notary's signed and sealed or stamped statement attesting to the time and place that the specified acts and documents were authenticated." *Black's Law Dictionary* (8th ed). Therefore, the presumption of truth under the statute only applies to notarial acts rather than the substantive contents of the notarized instrument. Although *Settles* has precedential effect under stare decisis, MCR 7.215(C)(2), we are not bound to follow it. MCR 7.215(J)(1). In any event, the presumption is rebuttable. MCL 55.307(2); *Vriesman v Ross*, 9 Mich App 102, 106-107; 155 NW2d 857 (1967). Under the circumstances, we find no error in the trial court declining to accept that the various assignments were all necessarily valid. However, this discussion has no bearing on any presumptions otherwise attendant to affidavits, instruments, or motions for summary disposition generally.

The trial court's denial of summary disposition is affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

---

[6] Presumably, all named individuals who signed any of the assignments could provide testimony, and given defendant's concerns about double payment, Fifth Third could be re-joined as a party.

[7] Repealed effective April 1, 2004, by 2003 PA 238.