COVENTRY PARKHOMES CONDOMINIUM ASSOCIATION v
FEDERAL NATIONAL MORTGAGE ASSOCIATION

Docket No. 304188. Submitted October 10, 2012, at Detroit. Decided
October 25, 2012 at 9:05 a.m. Leave to appeal sought.

Coventry Parkhomes Condominium Association brought an action in
the Oakland Circuit Court against the Federal National Mortgage
Association (FNMA) to foreclose on a lien it had imposed on Denise
Walsh for unpaid condominium-association fees and dues. Walsh
had purchased a unit in Coventry's condominium complex pursu-
ant to a mortgage agreement with JP Morgan Chase Bank, N.A.,
which later assigned its interest in the mortgage to FNMA. The
mortgage was recorded in 2005, Coventry's lien was recorded in
2009, and the assignment of the mortgage to FNMA was made and
recorded in 2010. The court, Denise Langford Morris, J., granted
summary disposition in favor of Coventry, concluding that Coven-
try's lien had priority over the mortgage assigned to FNMA and
that FNMA was liable to Coventry for $16,980.98 in unpaid
assessments, late fees and charges, interest, and costs of collection.
FNMA appealed.

The Court of Appeals *held*:

1. The trial court erred by concluding that Coventry's lien
had priority over FNMA's mortgage. Under the Condominium
Act, MCL 559.101 *et seq.*, a first mortgage of record has priority
over a condominium-association lien if the first mortgage of
record was recorded before the condominium-association lien.
Although the Condominium Act does not define "first mortgage
of record," MCL 559.110(1) defines "record" as to record
pursuant to the laws of this state relating to the recording of
deeds, and the common meaning of "first" is being before all
others with respect to time, order, rank, or importance. Accord-
ingly, the plain meaning of "first mortgage of record" as used in
MCL 559.208(1) is the mortgage that is recorded before all
others with respect to time pursuant to the laws of this state
relating to the recording of deeds. Walsh's mortgage to Chase
was the first mortgage of record under MCL 559.208(1), and it
was recorded before Coventry's lien was recorded. Even though
Chase assigned its interest in the mortgage to FNMA, the

mortgage was still the first mortgage of record because it was recorded before any other mortgage pursuant to the laws of this state relating to the record of deeds. Thus, notwithstanding the assignment to FNMA, the mortgage had priority over Coventry's lien. The fact that MCL 559.208(1) does not mention assignments or assignees did not support a conclusion that the assigned mortgage was subordinate to the condominium-association lien under the principle of *expressio unius est exclusio alterius* given that the mortgage assigned to FNMA was a first mortgage of record recorded before Coventry's lien under the plain language of MCL 559.208(1).

2. FNMA was not liable to Coventry under MCL 559.211, which provides that upon the sale or conveyance of a condominium unit, all unpaid assessments, interest, late charges, fines, costs, and attorney fees against a condominium unit generally must be paid out of the sale price or by the purchaser in preference over any other assessments or charges. Although FNMA, as an assignee of a mortgage, was a "purchaser" as that term is defined under MCL 565.34, that definition applies only to chapter 565 of the Michigan Complied Laws. Moreover, MCL 559.211 applies only upon the sale or conveyance of a condominium unit, whereas the present case involved only the obtainment of a security interest in a condominium unit through the assignment of a mortgage.

Reversed.

CONDOMINIUMS — MORTGAGES — LIENS — PRIORITY OF CONDOMINIUM-ASSOCIATION LIENS — FIRST MORTGAGES OF RECORD — ASSIGNMENTS.

The Condominium Act, MCL 559.101 *et seq.*, provides that a first mortgage of record has priority over a condominium-association lien if the first mortgage of record was recorded before the condominium-association lien; a first mortgage of record for purposes of the Condominium Act is a mortgage that is recorded before all others with respect to time pursuant to the laws of this state relating to the recording of deeds; the assignment of a first mortgage of record does not affect its priority under the Condominium Act (MCL 559.208[1]).

*Meisner & Associates, P.C.* (by *Robert M. Meisner, Daniel P. Feinberg*, and *Brian R. Harris*), for plaintiff.

*Orlans Associates, P.C.* (by *Justin F. Carter*), for defendant.

Amicus Curiae:

*Alexander, Zelmanski, Danner & Fioritto, PLLC* (by
*D. Douglas Alexander* and *Corene C. Ford*), for the
Community Associations Institute.

Before: O'CONNELL, P.J., and DONOFRIO and BECKERING,
JJ.

PER CURIAM. In this priority dispute between plaintiff,
Coventry Parkhomes Condominium Association, and
defendant, Federal National Mortgage Association
(FNMA), FNMA appeals by right the circuit court's
order granting Coventry's motion for summary dispo-
sition under MCR 2.116(C)(10). We reverse.

I

On July 29, 2005, Denise Walsh, a coowner of a unit
in Coventry's condominium complex, entered into a
mortgage agreement with JP Morgan Chase Bank, N.A.
(Chase), and the mortgage was recorded on August 18,
2005. On June 17, 2009, Coventry recorded a lien on
Walsh's condominium unit for unpaid association fees
and dues. On July 20, 2010, Chase assigned its interest
in the mortgage to FNMA. FNMA recorded the assign-
ment on September 9, 2010.

On November 10, 2010, Coventry initiated the in-
stant action against FNMA to foreclose on its
condominium-association lien and to obtain from
FNMA unpaid condominium assessments and fees in
the amount of $5,673.10, plus late charges and fines. On
February 8, 2011, Coventry moved the circuit court for
summary disposition under MCR 2.116(C)(10). Coven-
try argued that, under the Condominium Act, MCL
559.101 *et seq.*, its lien had priority over the mortgage

assigned to FNMA and FNMA was liable to Coventry for all unpaid assessments, fees, late charges, interest, and attorney fees levied against Walsh's condominium unit. In response, FNMA argued that it was entitled to summary disposition under MCR 2.116(I)(2), insisting that its mortgage had priority over Coventry's lien and that it was not liable to Coventry for dues and assessments because FNMA was merely a holder of a security interest and not a coowner of Walsh's condominium unit.

After a hearing, the circuit court granted summary disposition in favor of Coventry, concluding that Coventry's lien had priority over the mortgage assigned to FNMA and that FNMA was liable to Coventry for $16,980.98 in unpaid assessments, late fees and charges, interest, and costs of collection. FNMA appeals the circuit court's order, as previously discussed.

II

The sole issue before this Court is whether the circuit court erroneously granted summary disposition in favor of Coventry, concluding that Coventry's lien had priority over the mortgage assigned to FNMA and that FNMA was liable to Coventry for unpaid assessments, late fees and charges, interest, and costs of collection.

We review de novo a trial court's summary-disposition ruling. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 247; 776 NW2d 145 (2009). A motion for summary disposition under MCR 2.116(C)(10) may be granted if

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Campbell v Dep't of Human Servs*, 286 Mich App 230, 235; 780 NW2d 586 (2009). Furthermore, "[s]tatutory interpretation is a question of law that we review de novo on appeal." *Johnson v QFD, Inc*, 292 Mich App 359, 364; 807 NW2d 719 (2011).

" 'Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests.' " *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), quoting *Lakeside Assoc v Toski Sands*, 131 Mich App 292, 298; 346 NW2d 92 (1983). "Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Id.* MCL 565.29 provides as follows, in pertinent part:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

Thus, a later interest holder may take priority over a prior conveyed interest only if the later interest holder takes in "good faith." "A good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). Notice can be actual or constructive. *Richards*, 272 Mich App at 539. Constructive notice "is notice that is imputed to a person concerning all matters properly of record . . . ." *Id.* at 540 (citation and quotation marks omitted).

It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and

being subject to the same defenses as the assignor. See, e.g., *Nichols v Lee*, 10 Mich 526, 528-529 (1862); *Burkhardt v Bailey*, 260 Mich App 636, 652-653; 680 NW2d 453 (2004); *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998); *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). "When a mortgage is assigned, the assignee, for all beneficial purposes claimed under it by him, becomes a party to the mortgage, and stands in the place of the mortgagee . . . ." *Nichols*, 10 Mich at 528; see also *Burkhardt*, 260 Mich App at 653.

Moreover, Michigan caselaw illustrates that a mortgage assignee has the same priority rights as the original mortgage assignor. See *Wilson v Campbell*, 110 Mich 580; 68 NW 278 (1896). In *Wilson*, Freeling H. Potter granted a first mortgage to E. E. White on January 27, 1886. White assigned the mortgage to the defendant, Elizabeth Campbell, on June 14, 1887. Potter then sold the mortgaged property to the complainant, Robert Wilson, on October 3, 1888. On April 1, 1892, Wilson granted a second mortgage on the property to Michigan Mortgage Company, Limited, which then assigned the mortgage to Mrs. John Nichols on April 27, 1892. On April 13, 1894, Campbell recorded her assignment of the first mortgage. *Id.* at 581-583. The Michigan Supreme Court held that Campbell's mortgage had priority over Nichols's mortgage. *Id.* at 589. The Court opined, in pertinent part:

> The question of priority between the mortgages of Mrs. Nichols and [Mrs. Campbell] is also involved. The mortgage of Mrs. Campbell was prior in point of time, and was duly recorded. . . . [Mrs. Nichols] undoubtedly assumed that there was no prior incumbrance. Had she examined the record, she would have discovered a mortgage to Mr. White. She must, therefore, be held bound by notice of this. The

case is certainly not stronger for her than it would have been had White become the purchaser of the land, and attempted to convey or incumber the fee. Having constructive knowledge of the existence of this mortgage, *Mrs. Nichols was also chargeable in law with the further notice that the mortgage is a lien in the hands of any person to whom it may have been legally transferred, and that the record of such transfer is not necessary to its validity, nor as a protection against the purchaser of the property mortgaged, or any other person than a subsequent purchaser in good faith of the mortgage itself or the note or debt secured by it*, but, rather, that one purchasing the premises from the mortgagee would take them subject to the lien of the mortgage, irrespective of the ownership of it, unless the mortgagee was the owner. [*Id.* at 588-589 (emphasis added).]

Notwithstanding Michigan's race-notice scheme and the caselaw regarding assignments, the parties agree that the Condominium Act governs the priority dispute in this case. MCL 559.208(1) of the Condominium Act states the following with respect to priority:

> *Sums assessed to a co-owner by the association of co-owners that are unpaid together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the condominium documents, constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment before other liens except* tax liens on the condominium unit in favor of any state or federal taxing authority and *sums unpaid on a first mortgage of record, except that past due assessments that are evidenced by a notice of lien recorded as set forth in subsection (3) have priority over a first mortgage recorded subsequent to the recording of the notice of lien.* The lien upon each condominium unit owned by the co-owner shall be in the amount assessed against the condominium unit, plus a proportionate share of the total of all other unpaid assessments attributable to condominium units no longer owned by the co-owner but which

became due while the co-owner had title to the condo-
minium units. The lien may be foreclosed by an action or by
advertisement by the association of co-owners in the name
of the condominium project on behalf of the other co-
owners. [Emphasis added.]

The plain language of MCL 559.208(1) indicates that a
"first mortgage of record" has priority over a
condominium-association lien if the "first mortgage of
record" was recorded before the condominium-
association lien. This is consistent with Michigan's
race-notice scheme. However, a condominium-
association lien would have priority over a second
mortgage even if the second mortgage was recorded
before the condominium-association lien. In this re-
spect, MCL 559.208(1) departs from Michigan's race-
notice scheme.

The Condominium Act does not define "first mort-
gage of record." When interpreting the Condominium
Act, we adhere to well-established principles of statu-
tory interpretation:

The primary goal of statutory construction is to give
effect to the Legislature's intent. This Court begins by
reviewing the language of the statute, and, if the language
is clear and unambiguous, it is presumed that the Legisla-
ture intended the meaning expressed in the statute. Judi-
cial construction of an unambiguous statute is neither
required nor permitted. When reviewing a statute, all
non-technical words and phrases shall be construed and
understood according to the common and approved usage
of the language, and, if a term is not defined in the statute,
a court may consult a dictionary to aid it in this goal.
[*McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d
517 (2010) (citations and quotation marks omitted).]

The act defines "record" as "to record pursuant to the
laws of this state relating to the recording of
deeds . . . ." MCL 559.110(1). The common meaning of

"first" is "being before all others with respect to time, order, rank, importance, etc." *Random House Webster's College Dictionary* (2001). Accordingly, the plain meaning of "first mortgage of record" as used in MCL 559.208(1) is the mortgage that is recorded before all others with respect to time pursuant to the laws of this state relating to the recording of deeds.

In the present case, Walsh's mortgage to Chase was the first mortgage of record under MCL 559.208(1). It was recorded pursuant to the laws of this state relating to the recording of deeds before any other mortgage. Furthermore, it was recorded before Coventry's lien was recorded. Even though Chase assigned its interest in the mortgage to FNMA, the mortgage was still the first mortgage of record because it was recorded before any other mortgage pursuant to the laws of this state relating to the record of deeds. And it was still a first mortgage of record recorded before Coventry's lien was recorded. The assignment to FNMA did not change this. Thus, notwithstanding the assignment to FNMA, the mortgage had priority over Coventry's lien because it was a first mortgage of record recorded before Coventry's lien was recorded. Nothing in the text of MCL 559.208(1) supports the conclusion that the mortgage—once assigned to FNMA—was no longer such a first mortgage of record. The statute does not provide that a first mortgage of record recorded before a condominium-association lien is no longer such a mortgage once it is assigned. Similarly, the statute does not state that such a mortgage does not have priority over a condominium association's lien once the mortgage has been assigned. Under the plain meaning of MCL 559.208(1), the mortgage assigned to FNMA has priority over Coventry's lien.

While the Condominium Act governs the parties' priority dispute, we note that the result reached today is

consistent with the principle that an assignee stands in the place of an assignor, including for purposes of priority rights with respect to the assignment of a mortgage. FNMA stands in the place of Chase, whose mortgage Coventry had notice of and, thus, had priority over Coventry's lien. A record of the assignment of the mortgage from Chase to FNMA "is not necessary to its validity, nor as a protection against the purchaser of the property mortgaged, or any other person than a subsequent purchaser in good faith of the mortgage itself or the note or debt secured by it . . . ." *Wilson*, 110 Mich at 589.

Coventry argues that the assigned mortgage should be subordinate to its condominium-association lien because, while MCL 559.208(1) expressly subordinates condominium-association liens to first mortgages of record, MCL 559.208(1) does not mention assignments or assignees. Coventry insists that the principle of *expressio unius est exclusio alterius* applies in this case. We recognize the "general principle of interpretation that the mention of one thing implies the exclusion of another thing," *Dave's Place, Inc v Liquor Control Comm*, 277 Mich 551, 555; 269 NW 594 (1936) (citation and quotation marks omitted); however, we decline to apply that principle in this case to reach an implicit conclusion that an assigned mortgage is subordinate to a condominium-association lien when the mortgage assigned to FNMA is a first mortgage of record recorded before Coventry's lien under the express, unambiguous plain language of MCL 559.208(1).

Coventry also argues that under MCL 559.211, FNMA is liable to Coventry for all unpaid assessments, interest, late charges, fines, costs, and attorney fees because FNMA is a "purchaser" under MCL 565.34. We do not agree. While Coventry is correct that MCL 565.34 defines "purchaser" as including an assignee of

a mortgage, the definition of "purchaser" in MCL 565.34 does not extend to MCL 559.211 because MCL 565.34 limits the use of the definition to chapter 565 of the Michigan Complied Laws. See MCL 565.34 (prefacing the definition with the following language: "[t]he term 'purchaser,' as used in this chapter"). Moreover, MCL 559.211 does not apply in this case. MCL 559.211 states the following:

> (1) *Upon the sale or conveyance of a condominium unit,* all unpaid assessments, interest, late charges, fines, costs, and attorney fees against a condominium unit shall be paid out of the sale price or by the purchaser in preference over any other assessments or charges of whatever nature except the following:

> (a) Amounts due the state, or any subdivision thereof, or any municipality for taxes and special assessments due and unpaid on the condominium unit.

> (b) Payments due under a first mortgage having priority thereto.

> (2) A purchaser or grantee is entitled to a written statement from the association of co-owners setting forth the amount of unpaid assessments, interest, late charges, fines, costs, and attorney fees against the seller or grantor and the purchaser or grantee is not liable for, nor is the condominium unit conveyed or granted subject to a lien for any unpaid assessments, interest, late charges, fines, costs, and attorney fees against the seller or grantor in excess of the amount set forth in the written statement. Unless the purchaser or grantee requests a written statement from the association of co-owners as provided in this act, at least 5 days before sale, the purchaser or grantee shall be liable for any unpaid assessments against the condominium unit together with interest, costs, fines, late charges, and attorney fees incurred in the collection thereof. [Emphasis added.]

Plainly, MCL 559.211 addresses liability for unpaid assessments, interest, late charges, fines, costs, and

attorney fees "[u]pon the sale or conveyance of a condominium unit[.]" MCL 559.211(1). The present case does not involve the sale or conveyance of a condominium unit; rather, it involves FNMA's obtainment of a security interest in a condominium unit through the assignment of a mortgage. MCL 559.211 does not apply to an assignment of a mortgage of a condominium unit because it deals with the conveyance of a coowner's interest and not a mortgagee's interest.

Accordingly, we conclude that the circuit court erroneously granted summary disposition in favor of Coventry.

Reversed.

O'CONNELL, P.J., and DONOFRIO and BECKERING, JJ., concurred.