# STATE OF MICHIGAN

# COURT OF APPEALS

PARK PLACE HERITAGE LLC,

UNPUBLISHED
February 25, 2016

Plaintiff-Appellant,

v

No. 325056
Macomb Circuit Court

CUMMINS GROUP INC,

LC No. 13-003818-NM

Defendant-Appellant.

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals by right from the trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) in defendant's favor. For the reasons set forth in this opinion, we affirm.

On September 29, 2005, Sable Realty Ventures—Warren Seniors, LLC (SRV) entered into a contract with defendant for the architectural design of a senior housing complex in Warren, Michigan. After defendant designed the facility, construction on it started sometime in 2006. Philip Ruggeri, a two-thirds owner of SRV, testified that he was satisfied with the finished project, and in October 2007, the City of Warren issued a certificate of occupancy for the facility.

In 2012, although SRV had not been looking to sell the facility, plaintiff inquired about purchasing it. SRV hired an attorney to conduct the sale negotiations, which commenced in late October or early November 2012. Ruggeri explained that SRV wanted to close by December 31, 2012. He stated that after several conferences the parties arrived at a price.

On December 28, 2012, SRV sold the facility to plaintiff. Later, while attempting to refinance the facility, plaintiff became aware that the facility was not compliant with certain requirements of the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and the American National Standard Institute (ANSI). Plaintiff contacted SRV and informed it about the violations.[1]

---

[1] Ruggeri also learned that the problem existed, to a lesser extent, with a second facility that he was in the process of selling to plaintiff. With regard to the second facility, Ruggeri testified that

-1-

Ruggeri stated that because the parties had already closed on the facility, there was "no exposure on my behalf" because of the code violations. Notably, Ruggeri testified that before closing there were no discussions about any code violations. He added that, at the time of closing, as far as he knew the facility did not have any code violations. Ruggeri further testified that SRV received the full price it negotiated for without any concessions for code violations. Finally, Ruggeri noted that the purchase agreement that plaintiff signed with SRV included an "as is" clause, which protected SRV from liability as a result of the code violations.[2]

On July 8, 2013—about seven months after closing—SRV executed an assignment of claims in favor of plaintiff. The assignment provided that SRV was assigning ". . . any and all claims, demands, charges, suits and causes of action of any kind whatsoever, whether known or unknown, foreseen or unforeseen, in law or in equity, based in tort, contract, or otherwise, which Assignor has or may have against any party[.]"

In reliance on the assignment, plaintiff brought claims against defendant alleging breach of contract, negligence, and professional malpractice. On July 11, 2014, defendant filed a motion for summary disposition. Defendant alleged that SRV did not have any claims to assign to plaintiff because it had received the negotiated price for the facility, without any deductions for the code violations, and as a result it did not suffer any damages. Defendant also alleged that the assignment of claims was invalid because it was not supported by legal consideration.[3] On October 17, 2014, the trial court granted defendant's motion for summary disposition, and on November 21, 2014, the trial court denied plaintiff's motion for reconsideration. This appeal follows.[4]

---

after he learned of the code violations, he had to agree to place $98,000 in escrow in order to make the facility code compliant.

[2] The "as is" clause provided in pertinent part that the seller "has not made, does not make and specifically negates and disclaims any representations . . . , warranties . . . , promises, covenants, agreements or guarantees of any kind or character whatsoever, whether express implied, oral or written, past, present or future, of, as to, concerning or with respect to . . . the compliance of or by the project or its operation with any laws, rules, ordinances or regulations of any applicable governmental authority or body." It also provided that "buyer further acknowledges and agrees that to the maximum extent permitted by law, the sale of the project as provided for herein is made on an 'as is' condition and basis with all faults." Further, as part of the purchase agreement, plaintiff had a right to inspect the facility and other items furnished by SRV and, if dissatisfied, it had the right to terminate the agreement without penalty by December 21, 2012. Ruggeri explained before the sale he gave plaintiff a copy of the construction documents generated by defendant, and he allowed plaintiff access to the facility. Plaintiff did not exercise its option to terminate and the parties closed on December 28, 2012.

[3] The trial court did not reach the issue of whether the assignment was invalid for lack of consideration. Accordingly, we will not address this issue further.

[4] We review de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

-2-

"It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor." *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mortgage Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012). Thus, because plaintiff is SRV's assignee, plaintiff can only bring a claim against defendant if SRV could have brought a claim.

Plaintiff brought claims for breach of contract, negligence, and professional malpractice. To establish a prima facie case for breach of contract, a plaintiff must establish "by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller–Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). To establish a prima facie case of negligence, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Loweke v Ann Arbor Ceiling & Partition Co*, 489 Mich 157, 162; 809 NW2d 553 (2011). Finally, "[a] malpractice claim requires proof of simple negligence based on a breach of a professional standard of care." *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 409; 516 NW2d 502 (1994), abrogated on other grounds *Ormsby v Capital Welding, Inc*, 471 Mich 45; 684 NW2d 320 (2004), which means that damages must be established to maintain a claim for professional malpractice. See *Loweke*, 489 Mich at 162.

Accordingly, in order to prevail on any of its claims, plaintiff had to establish that SRV was injured and suffered damages as a result of defendant's design of the senior living facility. That it cannot do because, at the time it made the assignment, SRV had suffered no damages from defendant's alleged negligence and breach of contract. At the time it made the assignment, SRV no longer owned the facility. It could not be sued for selling a facility that was not code compliant because of the "as is" clause in the purchase agreement. Further, Ruggeri's undisputed testimony established that SRV had received its negotiated asking price for the facility, paid in full, without a reduction for the cost of the code violations. Ultimately, because plaintiff stands in the shoes of the assignor, SRV, plaintiff has no claim against defendant. See *Coventry Parkhomes Condo Ass'n*, 298 Mich App at 256-257.[5] Under these facts, the trial court did not err in granting summary disposition in defendant's favor.

---

[5] Plaintiff asserts on appeal that the trial court erred in granting summary disposition because it must have concluded that there was no design defect in the architectural plans. However, a careful reading of the court's opinion makes it clear that the court concluded that even if a design defect existed, SRV was not harmed because SRV had received its full asking price for the facility. Further, because the facility was sold "as is" SRV was not liable for any alleged defects on the facility after they sold it. This determination did not require the court to weigh the evidence as to whether a design defect existed.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro