*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF YACOUB AUDISHO, by SALIMA
AUDISHO, Personal Representative, and SALIMA
AUDISHO, Individually,

UNPUBLISHED
June 24, 2021

Plaintiffs-Appellees,

and

SKY 1 TRANSPORT, INC.,

Intervening Plaintiff-Appellee

v

No. 352391
Macomb Circuit Court
LC No. 2018-004951-NF

EVEREST NATIONAL INSURANCE COMPANY,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

In this first-party no-fault action, defendant Everest National Insurance Company appeals by leave granted[1] the trial court's denial of summary disposition as to the claims of plaintiffs, Salima Audisho and the Estate of Yacoub Audisho,[2] and intervening plaintiff, Sky 1 Transport, Inc. For the reasons stated in this opinion, we affirm.

---

[1] *Audisho v Everest Nat'l Ins Co*, unpublished order of the Court of Appeals, entered April 29, 2020 (Docket No. 352391).

[2] Yacoub Audisho died during the pendency of proceedings below. Yacoub's estate was substituted in as a plaintiff, with Salima acting as Yacoub's personal representative. Nevertheless, Yacoub and Salima will be collectively referred to as "plaintiffs."

## I. BACKGROUND

Yacoub, who did not read or write English, obtained an automobile policy from Everest on December 4, 2017. On December 24, 2017, plaintiffs were injured in a motor vehicle accident. At the time of the accident, Yacoub was driving the insured vehicle and Salima, his wife, was a passenger. Following the accident, plaintiffs made a claim for no-fault benefits against the policy issued by Everest. At some point, Everest's third-party administrator, American Claims Management (ACM), mailed a letter to Yacoub notifying him that his policy was being rescinded because he failed to list Salima "as a household resident" on his application for insurance.[3] It is undisputed that a check in the amount of Yacoub's premium was also mailed to Yacoub and that he endorsed and cashed the check.

Plaintiffs filed suit in December 2018, alleging claims for personal protection insurance (PIP) benefits under the terms of Yacoub's insurance policy and the no-fault act, MCL 500.3101 *et seq*. Sky 1 Transport intervened as assignee of plaintiffs to recover for services it rendered to Yacoub and Salima. Following discovery, Everest moved for summary disposition on the basis that Yacoub made a material misrepresentation when applying for insurance, thereby entitling Everest to rescission of the policy. Everest also argued that plaintiffs and Sky 1 Transport were estopped from contesting rescission because Yacoub accepted rescission by cashing the premium refund check. Everest further asserted that, if a balancing of equities was required to rescind the policy as to Salima and Sky 1 Transport, the equities favored rescission.

In their response brief, plaintiffs contended that there was a genuine issue of material fact whether Yacoub made a material misrepresentation and that the equities did not support rescission as to Salima. Sky 1 Transport filed a brief concurring with plaintiffs. During the hearing on Everest's motion, plaintiffs also argued, for reasons that will be more fully discussed, that there was a genuine issue of material fact whether Yacoub accepted rescission by cashing the premium refund check.

The trial court denied Everest's motion for summary disposition, concluding that Yacoub did not make a material misrepresentation on the application for insurance and that there was a genuine issue of material fact whether Yacoub accepted Everest's rescission by cashing the premium refund check. Everest moved the trial court for reconsideration on the basis of evidence it had not previously submitted. The trial court denied Everest's motion for reconsideration for failure to demonstrate palpable error. Everest now appeals.[4]

---

[3] Although Everest consistently refers to the application as requesting the names of all household residents this is not quite accurate. The relevant portion of the application directed Yacoub to list all "Drivers" in the household. It is uncontested that Salima did not have a license and did not drive. Everest argued that she should nonetheless have been listed as a driver because the application defined "driver" or "potential driver" as "all household members age 14 or older."

[4] Everest has not sought reversal on the ground that the trial court erred by ruling that Yacoub's application did not contain a material misrepresentation.

## II. ANALYSIS

### A. ACCEPTANCE OF RESCISSION – YACOUB

Everest first argues the trial court erred by denying its motions for summary disposition with respect to Yacoub because there is no genuine issue of material fact that he accepted rescission of his policy by endorsing and cashing the premium refund check. We disagree.[5]

An insurance policy is a contract. *Morley v Auto Club of Mich*, 458 Mich 459, 465; 581 NW2d 237 (1998). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). Rescission of a contract must be enforced when there was mutual assent of both parties. 13 Corbin, Contracts (rev ed), § 67.8, pp 47-49; 29 Williston, Contracts (4th ed), § 69:50, pp 119-121, § 73:15, pp 48-49. "A mutual rescission may be inferred from the conduct of the parties clearly evidencing their intention to treat the contract as at an end." *Young v Rice*, 234 Mich 697, 701; 209 NW2d 43 (1926) (quotation marks and citation omitted).

Everest argues that Yacoub accepted rescission of the insurance policy by endorsing and cashing the premium refund check. Generally, the endorsement and cashing of a check is sufficient to establish an agreement. See, e.g., *Puffer v State Mut Rodded Fire Ins Co of Mich*, 259 Mich 698, 702; 244 NW 206 (1932) ("The failure of the parties to make a verbal agreement of settlement, separate from the indorsement on the check, is not of consequence."). However, viewing the evidence in a light most favorable to plaintiffs, we conclude that reasonable minds could differ on whether Yacoub knew he was endorsing and cashing a premium refund check.

In support of its motion for summary disposition, Everest produced a letter to Yacoub dated March 22, 2018, that stated the company was rescinding his policy because of his failure to list Salima on the application. The letter also indicated that a premium refund in the amount of $1,315.16 was enclosed, but the copy of the check provided by Everest was dated April 18, 2018, which strongly suggested that the letter and check were not mailed together. In addition, the copy of the check submitted did not contain a memo line or any other indication that the check described the reason for its issuance. In the absence of a writing that directly accompanied the premium

---

[5] We review de novo a trial court's decision on a motion for summary disposition. *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 653; 954 NW2d 231 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* "A court may only grant the motion when there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Highfield Beach*, 331 Mich App at 653 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record leave[s] open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted; alteration in original).

refund check stating what it constituted, a reasonable juror could find Yacoub did not know he was agreeing to a rescission when he endorsed and cashed the premium refund check.

Everest asks that we consider the additional evidence that it submitted in support of its motion for reconsideration, namely, an affidavit from LeAnna Rivera, an ACM representative, asserting that a rescission letter dated April 23, 2018, was sent to Yacoub with the premium refund check. However, in reviewing the trial court's ruling on the motion for summary disposition, we may consider "only what was properly presented to the trial court before its decision on the motion." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010) (quotation marks and citation omitted). Everest's motion for summary disposition did not include any deposition testimony or affidavit stating when the rescission letter and check were sent to Yacoub. Accordingly, the trial court did not err by denying summary disposition because a reasonable trier of fact could have found the rescission letter and the check were not sent together since the rescission letter proffered by Everest was dated March 22, 2018, and the check was dated April 18, 2018, nearly a month later.

Everest also argues that, given the new evidence, the trial court abused its discretion by denying the motion for reconsideration.[6] "[A] trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). There is no dispute that Everest could have produced Rivera's affidavit with its motion for summary disposition. Everest contends that it did not do so because plaintiffs disputed for the first time at the motion hearing whether Yacoub had adequate notice that the check related to rescission of the policy. This overlooks, however, that as the moving party under MCR 2.116(C)(10) Everest had the initial burden to support its position that Yacoub assented to rescission with documentary evidence. See *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). While a trial court may give a party a "second chance" with a motion for reconsideration, it is not required to do so. *Yoost*, 295 Mich App at 220. Accordingly, the trial court did not abuse its discretion by denying Everest's motion for reconsideration.

## B. BALANCING OF THE EQUITIES – SALIMA

Everest also argues that the trial court erred by denying its motion for summary disposition as to Salima because Yacoub's acceptance of rescission precluded her claim as a matter of law. Setting aside that there is a material question of fact regarding Yacoub's purported acceptance of the rescission, Everest's argument runs counter to *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411-412; 919 NW2d 20 (2018), which held that rescission is an equitable remedy and that insurers do not have an "automatic" right to rescind an insurance policy with respect to third parties. Everest alternatively argues that the equities favor rescission as to Salima. We disagree.

---

[6] A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. *Farm Bureau Ins Co v TNT Equipment, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes." *Id.*

A claim for rescission of a contract on the basis of fraud or misrepresentation is equitable in nature. *Id*. at 409. A court is not required to grant rescission in all cases, but must instead balance the equities to determine whether the rescinding party is entitled to such relief. *Id*. at 410. Likewise, as noted, fraud or misrepresentation in the application for insurance does not grant an insurer an absolute right to rescind the policy with respect to third parties. *Id*. at 411. "[W]hen two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." *Id*. at 410-411 (quotation marks and citation omitted; second alteration in original). Whether rescission as to a third party is appropriate is determined on a case-by-case basis because "an absolute approach would unduly hamper and constrain the proper functioning of such remedies." *Id*. at 411.

Whether rescission of an insurance policy is equitable as to a third party is guided by a nonexclusive five-factor test. *Pioneer State Mutual Ins Co v Wright*, 331 Mich App 396, 411; 952 NW2d 586 (2020). The five factors, which this Court adopted from a concurring opinion by former Justice MARKMAN,[7] have been summarized as follows:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id*.]

The party seeking rescission bears the burden of showing that rescission would be equitable. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352753); slip op at 5, 10.

The first factor favors Everest. Plaintiffs' accident occurred only 20 days after Yacoub successfully applied for insurance coverage, and there was nothing in Yacoub's application that should have suggested to Everest that Yacoub was married. Accordingly, there is no indication that Everest could have discovered the alleged misrepresentation with additional professional diligence.

However, all other factors weigh against rescission. Regarding the second factor, although Yacoub and Salima were married and lived together, Salima testified that she: did not have a driver's license and did not drive; knew nothing about Yacoub's acquisition of the insurance policy; and was not present when he applied for the policy. Given the lack of contrary evidence, the second factor favors Salima. The third factor, which considers the claimant's fault in the

---

[7] See *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907 (2018) (MARKMAN, C.J., concurring).

accident, also favors Salima because she "was simply a passenger in [Yacoub's] car and was not involved in the operation of the vehicle." *Pioneer State*, 331 Mich App at 412.[8]

Everest argues that the fourth factor favors rescission because plaintiffs were notified of rescission within four months of the accident, giving Salima plenty of time to file a claim under the Michigan Assigned Claims Plan (MACP). However, "the fourth factor considers the present situation, not whether an injured party could have done something different" in the past. *Id*. at 413. Thus, "[t]he availability of other coverage should not be found where the claimant would be barred from recovery from a different insurer because of the one-year-back rule." *Farm Bureau*, ___ Mich App at ___; slip op at 9 n 11. At this point, Salima would be barred from recovering PIP benefits through the MACP because of the one-year statute of limitations and the one-year-back rule. See MCL 500.3145(1) and (2). This factor favors Salima.

The fifth factor, concerning whether enforcement of the policy would relieve the at-fault insured of tort liability, weighs against rescission for two reasons. First, affording first-party coverage to Salima does not require Everest to provide Yacoub with liability coverage. Second, no tort claim could be brought against Yacoub as the limitations period of three years has expired. MCL 600.5805(2).

In sum, four of the five factors favor denying rescission as to Salima. While "the factors are not to be merely counted up," *Farm Bureau*, ___ Mich App at ___; slip op at 10, taken together, the factors clearly indicate that granting rescission to Everest with regard to Salima's claim would be inequitable under the circumstances. Thus, we affirm the trial court's denial of summary disposition as to her claim. Moreover, on remand, the trial court should enter an order granting summary disposition to Salima on the issue of rescission based on the foregoing discussion. See MCR 2.116(I)(1) and (2).

## V. SKY 1 TRANSPORT

Sky 1 Transport intervened as plaintiffs' assignee to recover payment for medical services it provided to them. "[A]n assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor." *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012). As such, Sky 1 Transport's claim for payment of services it rendered to Yacoub is subject to Everest's defense that Yacoub accepted rescission, and its claim for payment of services it rendered to Salima is subject to Everest's request for equitable rescission against her. Because the trial court correctly denied Everest's motion for summary disposition as to plaintiffs, it also properly denied the motion with respect to Sky 1 Transport. And because Salima is entitled to summary disposition, on remand the trial court should enter an order granting summary disposition to Sky 1 Transport as Salima's assignee.

---

[8] The only information in the record about the circumstances surrounding the accident is that, around 8 p.m. on Christmas Eve, Yacoub was driving with Salima in the front passenger seat. It was snowing heavily and the car slipped and struck the car in front of them. Yacoub was not driving fast, and plaintiffs were wearing their seatbelts.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle