*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SPECTRUM HEALTH HOSPITALS and
SPECTRUM HEALTH PRIMARY CARE
PARTNERS, doing business as SPECTRUM
HEALTH MEDICAL GROUP,

Plaintiffs-Appellees,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellant,

and

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

Defendant.

UNPUBLISHED
July 22, 2021

No. 353553
Kent Circuit Court
LC No. 18-009976-NF

SPECTRUM HEALTH HOSPITALS and
SPECTRUM HEALTH PRIMARY CARE
PARTNERS, doing business as SPECTRUM
HEALTH MEDICAL GROUP,

Plaintiffs-Appellants,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN and FARM BUREAU
MUTUAL INSURANCE COMPANY OF
MICHIGAN,

Defendants-Appellees.

No. 354201
Kent Circuit Court
LC No. 18-009976-NF

-1-

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

In these consolidated cases,[1] Farm Bureau[2] appeals as of right the trial court's orders denying its two motions for summary disposition and plaintiffs appeal the trial court's order denying their motion for attorney fees. We affirm.

In November 2017 Kevin Schild, who held a no-fault policy with Farm Bureau, was in an automobile accident and suffered injuries as a result. Plaintiffs treated Schild for his injuries and charged Schild a total of $443,586.54 for the various treatments he received. In order to receive treatment, Schild was required to sign multiple "General Consent to Treatment" plans from plaintiffs as well as an agreement to assign his rights to plaintiffs. Plaintiffs then sent the bills for the charges regarding Schild's treatment to Farm Bureau. Farm Bureau paid plaintiffs $323,864.28 but refused to pay the remaining balance.

Plaintiffs filed their complaint alleging that Farm Bureau was in breach of its no-fault benefits agreement with Schild and sought both monetary damages and a declaratory judgment. Farm Bureau denied that it owed any payment to plaintiffs because the charges representing the remaining balance were not reasonable or customary within the meaning of the no-fault insurance act, MCL 500.3101 *et seq*.

Farm Bureau moved for summary disposition pursuant to MCR 2.116(C)(5), alleging that plaintiffs did not have standing to bring their suit because the assignment was not valid. Specifically, Farm Bureau argued that plaintiffs' last assignment was signed after the commencement of the case and that it would not relate back to plaintiffs' original complaint pursuant to *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182; 920 NW2d 148 (2018) (*Shah*). The trial court denied Farm Bureau's motion.

Farm Bureau thereafter moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), arguing that plaintiffs' charges were unreasonable and that no-fault interest and attorney fees were unassignable. The trial court denied Farm Bureau's motion for summary disposition. Farm Bureau then moved to withdraw its affirmative defenses, amend its answer to admit that the charges were reasonable, and request summary judgment in favor of plaintiffs so that it could appeal the trial court's rulings on summary disposition. Farm Bureau rationalized that it would be more efficient to simply appeal because it was already awaiting rulings on its cases currently

---

[1] *Spectrum Health Hosps v Farm Bureau Gen Ins Co*, unpublished order of the Court of Appeals, entered July 21, 2020 (Docket Nos. 353553 and 354201).

[2] Both Farm Bureau General Insurance Company of Michigan and Farm Bureau Mutual Insurance Company of Michigan are parties to the appeal in Docket No. 354201. However, only Farm Bureau General Insurance Company of Michigan is a party on appeal in Docket No. 353553. Given the consolidated nature of this case and the overlapping issues, we will refer to both defendants as "Farm Bureau" for the sake of simplicity.

pending on appeal that raised issues relevant to this case. The trial court entered a final judgment in favor of plaintiffs, and the parties stipulated to the amount of damages that would be adjudged. However, Farm Bureau disputed that plaintiffs would be entitled to attorney fees pursuant to MCL 500.3142(1). Plaintiffs then moved for attorney fees, which the trial court denied. These appeals followed.

Farm Bureau first argues on appeal that the trial court erred in denying its first motion for summary disposition, premised upon MCR 2.116(C)(5), because plaintiffs did not have standing to bring their claims. We disagree.

"This Court reviews de novo the grant or denial of summary disposition." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), [we] must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties." *Dep't of Social Servs v Baayoun*, 204 Mich App 170, 173; 514 NW2d 522 (1994).

Summary disposition pursuant to MCR 2.116(C)(5) is proper when "[t]he party asserting the claim lacks the legal capacity to sue." In its first motion for summary disposition, however, Farm Bureau argued that plaintiffs lacked standing to bring their claim. "[S]tanding to sue and capacity to sue are two distinct concepts" that should be not be improperly conflated. *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 502; 776 NW2d 387 (2009). "Lack of 'capacity to sue' refers to some legal disability, such as infancy or mental incompetency, which deprives a party of the right to come into court." *Moorhouse v Ambassador Ins Co, Inc*, 147 Mich App 412, 419 n 1; 383 NW2d 219 (1985). "Standing," on the other hand, focuses on whether a party has "a legally protected interest that is in jeopardy of being adversely affected." *In re Foster*, 226 Mich App 348, 358; 573 NW2d 324 (1997).

A party has standing whenever there is a legal cause of action and the litigant is deemed a proper party to request adjudication of the particular issue. *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355, 372; 792 NW2d 686 (2010). For example, a litigant has standing when a statutory scheme implies that the Legislature intended to confer standing on the litigant. *Id*. at 372. When a cause of action is not provided at law, a litigant may have standing "if the litigant has a special injury or right, or substantial interest that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Id*.

Relevant to the instant matter, an insured who is entitled to personal injury protection insurance (PIP) benefits under the no-fault act (see MCL 500.3107(1)(a)) may assign his or her rights to past or presently due benefits to a healthcare provider. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217 n 40; 895 NW2d 490 (2017). Once the benefits are assigned, a healthcare provider assignee "stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor." *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012).

Relying on *Shah, supra*, Farm Bureau argues that plaintiffs do not have standing to sue because the assignment of benefits claimed by plaintiffs is "prohibited." *Shah* involved "various healthcare providers attempting to recover from a no-fault insurer for services rendered to the insured . . . ." *Shah*, 324 Mich App at 186. The healthcare providers submitted claims to the

insurer, but the insurer refused to pay them. *Id.* The healthcare providers thus filed a complaint against the insurer. *Id.* While the claim was pending, our Supreme Court issued its opinion in *Covenant*, 500 Mich 191, holding that "healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." *Covenant*, 500 Mich at 196. The *Covenant* Court also clarified that it did not alter the insured's ability to assign his or her rights to benefits from the healthcare provider. After *Covenant* was issued, the healthcare providers in *Shah* obtained an assignment of rights from the insured so that they could pursue payment from the insurer consistent with *Covenant*. *Shah*, 324 Mich App at 187-188. The insurer moved for summary disposition pursuant to MCR 2.116(C)(8), and the trial court granted the motion, further denying the healthcare provider's motion for leave to amend their complaint. *Id.* at 191.

On appeal, this Court determined that "[h]ad [the insured] filed an action directly against [the insurer] on July 11, 2017, he would not have been permitted to recover benefits for any portion of the loss incurred one year before that date" pursuant to MCL 500.3145(1). *Id.* at 204. Because the healthcare providers were standing in the position of the insured, the *Shah* Court ruled that they did not obtain the right to pursue no-fault benefits for any portion of the loss incurred more than one year before the July 11, 2017 date. *Id.* This Court additionally held that the healthcare providers' motion for leave to amend their complaint was actually a motion to file a supplemental pleading containing additional information regarding the assignment, which could not relate back to their original pleading. *Id.*

*Shah* is inapplicable to the instant matter. Schild signed an assignment of rights within 10 days of beginning treatment with plaintiffs in November 2017—no assignments were obtained long after the services were provided in order to avoid summary disposition, and plaintiffs did not file any supplemental pleadings. More importantly, the last assignment signed by Schild on November 23, 2018, (which is specifically challenged by defendants) contained the same language as the assignments Schild signed on November 17, 2017, January 8, 2018, March 6, 2018, and October 18, 2018. The assignments state:

I assign Spectrum Health:

All benefits, claims, and any and all other rights, including the right to bill and talk to any third party for the purpose of seeking payment.

The right to file suit or intervene in any lawsuit or proceeding which involves my charges at Spectrum Health.

The right to take any other action seeking payment of my Spectrum health charges.

This assignment includes, but is not limited to, the right to appeal the denial of payment of my Spectrum Health charges from any payers for my charges at Spectrum Health. Payers include any employer-sponsored benefit plan, insurance policy or insurance coverage provided by law or contract.

-4-

> Any and all rights to settle, release or retain payment of my charges at Spectrum Health. I will not take any actions which would compromise payment or reimbursement of my Spectrum Health charges.
>
> I authorize and direct any insurance company, responsible for payment of my medical care/treatment to pay Spectrum Health for the services given to me.

Furthermore, Schild agreed to:

> Help [plaintiffs] try to get all insurance benefits.
>
> Pay all coinsurance, copayments and deductibles required by any insurance plan.
>
> Given up any and all rights to settle, release, or keep payment for my charges at Spectrum Health.
>
> Not do anything that would get in the way of [plaintiffs] being paid or reimbursed for my charges at Spectrum Health.

Farm Bureau argues that the assignments that Schild signed on November 17, 2017, January 8, 2018, March 6, 2018, and October 18, 2018, are limited in scope to only the services provided on the date the assignments were signed. Farm Bureau directs this Court, however, to no such limiting provision in the assignments and this Court finds none. Moreover, the language assigning Schild's rights to "all benefits, claims and any other rights" is unambiguous and extremely broad. Indeed, "there cannot be any broader classification than the word 'all'. In its ordinary and natural meaning, the word 'all' leaves no room for exceptions." *Heritage Resources, Inc v Caterpillar Fin Serv Corp*, 284 Mich App 617, 642; 774 NW2d 332 (2009) (citation omitted).

> The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement. If no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce the language as written, unless the contract is contract to law or public policy. Plain and unambiguous contract language cannot be rewritten by the Court under the guise of interpretation, as the parties must live by the words of their agreement. [*Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007) (quotation marks and citations omitted).]

The plain language of the assignment makes clear that plaintiffs, as assignees, take *all* rights that Schild had at the time of the assignment. No reasonable person could dispute that Schild was assigning all of his rights to plaintiffs or that plaintiffs stood in the shoes of Schild after the assignments. Because the plain and unambiguous language demonstrates that the scope of the assignment included all the benefits that Schild was supposed to receive from Farm Bureau in connection with the treatment provided, the trial court properly denied Farm Bureau's motion for summary disposition regarding the scope of the assignments and their impact on plaintiffs' standing.

Next, Farm Bureau argues that the trial court erred when it denied its second motion for summary disposition, premised upon MCR 2.116(C)(8) and (C)(10) and regarding Schild's purported inability to assign his right to no-fault penalty interest and attorney fees to plaintiffs. We again disagree.

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint" alone. *El-Khalil v Oakwood Healthcare, Inc.*, 504 Mich 152, 159; 934 NW2d 665 (2019). In deciding a motion under MCR 2.116(C)(8), "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Allen Park Retirees Ass'n, Inc v City of Allen Park*, 329 Mich App 430, 441; 942 NW2d 618 (2019) (quotation marks and citation omitted). A motion under MCR 2.116(C)(8) "may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004) (quotation marks and citation omitted).

MCR 2.116(C)(10) provides that summary disposition in favor of the moving party is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. MCR 2.116(G)(3)(b), (4); see also *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law." *Hoffner*, 492 Mich at 459. "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

As previously indicated, one entitled to PIP benefits under the no-fault act may assign his or her right to past or presently due benefits to a healthcare provider. *Shah*, 324 Mich App at 187. As also previously stated, an assignee stands in the shoes of the assignor, acquiring the same rights, and being subject to the same defenses. *Coventry Parkhomes Condo Ass'n*, 298 Mich App at 256-257. In the context of the no-fault act, this means that a healthcare provider who obtains an assignment from an insured person possesses whatever right the insured would have had to collect past due or presently due benefits from the insurer. See *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998).

As explained by this Court in *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35, 42; 645 NW2d 59 (2002) (quotation marks and citation omitted), "[t]he goal of the no-fault system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." "Permitting the imposition of these penalty provisions by healthcare providers provides a legitimate and enforceable incentive to no-fault insurers to perform their payment obligations, imposed by operation of law, in a reasonable and prompt manner." *Id.*

-6-

at 44. Even though the *Covenant* Court overturned the *Lakeland* Court's ruling regarding healthcare providers having a direct cause of action against insurers, the *Covenant* Court left intact the ability for insured individuals to assign their rights to the healthcare providers. *Covenant*, 500 Mich at 191, n 40. Because an assignee stands in the shoes of the assignor, the assignee is also entitled to these rights if they are assigned.

Farm Bureau nevertheless argues that an action to collect a penalty is not assignable at common law. However, Farm Bureau has not provided any authority that is binding on this Court to support its argument. Instead, Farm Bureau cites caselaw from nonbinding foreign jurisdictions. Farm Bureau also argues that Michigan has not revoked the common law. However, *Covenant* makes clear that insured individuals are free to assign all of their rights to a healthcare provider. Absent some precedential authority to demonstrate that *Covenant* does not allow for all rights to be assigned from the insured to the healthcare provider, Farm Bureau did not demonstrate that plaintiffs' claims were so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. See *Adair*, 470 Mich at 119. Similarly, when taking the facts in the light most favorable to plaintiffs, Farm Bureau did not demonstrate that reasonable minds could not differ regarding the applicability of the assignment from Schild to plaintiffs. Consequently, the trial court did not err by denying Farm Bureau's motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10).

Our last issue for resolution is plaintiffs' claim that the trial court erred by denying their motion for attorney fees sought pursuant to MCL 500.3148.

> The trial court's decision to grant or deny attorney fees under the no-fault act presents a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. We review de novo questions of law, but review the trial court's findings of fact for clear error. A finding is clearly erroneous where this Court is left with the definite and firm conviction that a mistake has been made. [*Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 194-195; 870 NW2d 731 (2015) (quotation marks and citation omitted).]

MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

In *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), our Supreme Court held that MCL 500.3148(1) "establishes two prerequisites for the award of attorney fees." First, the benefits must not have been "paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." *Id*. Second, the trial court must determine if the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Id*. "[A]n insurer's refusal to pay benefits is not unreasonable [i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional

law, or a bona fide factual uncertainty." *Id*. at 520 (quotation marks and citation omitted). When an insurance company refuses to tender payment of benefits, a rebuttable presumption will arise that requires the insurance company to justify its refusal. *Slocum v Farm Bureau Gen Ins Co of Mich*, 328 Mich App 626, 643; 939 NW2d 717 (2019). The determinative inquiry is not whether the insurer is ultimately held liable to pay the benefits, but whether the initial decision to not pay benefits was unreasonable. *Id.*

In this case, there is no factual dispute regarding Schild's automobile accident, the medical treatment he received, or the charges that he incurred from that medical treatment. Farm Bureau argues that its decision not to pay the charges was reasonable because it raised a legitimate question of law. Moreover, Farm Bureau argues that its question regarding whether plaintiffs' charges were reasonable, and what criteria may be used to determine whether those charges were reasonable, was an ongoing source of litigation in this Court and in our Supreme Court. At the time that Farm Bureau decided not to pay the charges, these questions were still outstanding. Farm Bureau raised those same questions in the trial court at the beginning of this case. Given that Farm Bureau was aware of its outstanding appeals concerning the same issues presented in this case, it was not unreasonable for Farm Bureau to deny payments while it awaited the conclusion of those issues because they presented legitimate legal questions. The trial court thus did not err in denying plaintiff's motion for attorney fees.

Affirmed.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens