*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NADIA HADID and RAJA HADID,

Plaintiffs-Appellants,

v

HUNTINGTON MANAGEMENT LLC,

Defendant-Appellee.

UNPUBLISHED
July 22, 2021

No. 353142
Wayne Circuit Court
LC No. 19-004207-NO

Before: TUKEL, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Plaintiffs, Nadia Hadid and Raja Hadid, appeal as of right the order granting defendant, Huntington Management LLC's, motion for summary disposition under MCR 2.116(C)(10). For the reasons discussed herein, we affirm.

This case arises from Nadia's slipping and falling on an interior sidewalk in defendant's apartment complex. Nadia and Raja, husband and wife, are tenants in defendant's apartment complex, where they live with their son, Randy Hadid.

Nadia slipped and fell on the sidewalk about 7:30 a.m. the morning of March 6, 2019. According to a weather report containing data recorded by the Detroit Metropolitan Wayne County Airport Station, from March 3, 2019 until March 5, 2019, a total of about 0.02 inches of snow fell. Specifically, 0.01 inches of snow fell on March 3, 2019, and 0.01 inches of snow fell and on March 4, 2019. The report shows that essentially no snow fell on March 5, 2019, and of the snow that fell on March 3, 2019 and March 4, 2019, it did not accumulate.

About 7:00 a.m. on March 6, 2019, Nadia walked out of her apartment toward her car. According to Nadia, it had been snowing for the past three days. She saw snow on the ground, but she did not see any ice. Nadia testified she had a path to her car clear of any ice or snow, as the night before, Randy had shoveled and scattered salt in front of the apartment. He cleared about a three-or four-foot-wide path leading from the apartment's exit to Nadia's car, which was parked directly in front of the apartment. Nadia walked this path to her car and started the car to let it warm up. While the car warmed, she decided to retrieve her and Raja's mail from their mailbox.

-1-

Nadia and Raja's mailbox sits atop a stanchion embedded in a block of concrete about 75 yards from their apartment. The mailbox stands on the curb of the parking lot, facing away from the parking lot. From the exit of their apartment, a sidewalk runs most of the way to the concrete platform on which the mailbox stands, but not all the way. Between the end of the sidewalk and the concrete platform is grass. The mailbox requires a key to access, so Nadia went into the apartment to retrieve the key. While she was inside, Raja warned her not to walk to the mailbox— presumably because of the presence of ice or snow on the ground.

Nevertheless, Nadia went. Rather than walk through the parking lot, she decided to take the sidewalk leading to the mailbox. According to Nadia, the parking lot is "worse" than the sidewalk. Also, Nadia insisted that she could not have driven her car to the mailbox on her way out, although she failed to explain why.

About halfway to the mailbox, Nadia slipped and fell to the ground, fracturing her left wrist. She testified that she slipped on a patch of ice, which was "covered with snow." She called Raja for help on her cell phone, and he came to her assistance. Asked in his deposition to describe the condition of the sidewalk at the time of Nadia's fall, Raja testified that about an inch-and-a-half of snow covered the ground, and so he could not see the surface of the sidewalk nor the surface of the parking lot. But later in his deposition, Raja testified that the whole sidewalk—from his and Nadia's apartment to the mailbox—was covered with ice. Later again, Raja seemed to concede that he had just assumed that the sidewalk was completely covered in ice—he had not actually seen it.

Twenty days later, plaintiffs' sued defendant. Plaintiffs alleged that defendant violated its statutory duty under MCL 554.139(1)(a) to ensure common areas are fit for their intended use, that defendant had violated § 302.3 of the International Property Maintenance Code (IPMC), and that defendant breached its duty under common law to protect Nadia from an unreasonable risk of harm posed by the presence of ice and snow on defendant's sidewalks and parking lots. The trial court issued a scheduling order setting a discovery cutoff date of November 5, 2019.

Once discovery was underway, defendant sent interrogatories to plaintiffs asking them to disclose information about their witnesses. Notably, in one interrogatory, defendant asked plaintiffs to "indicat[e] with respect to each witness, the allegations in [plaintiffs'] Complaint that the witness will be called up to support." In another interrogatory, defendant requested that for each witness identified in plaintiffs' list, plaintiffs state "[t]he facts they will be called to provide testimony regarding." Plaintiffs failed to provide a complete response to these interrogatories. Plaintiffs simply listed the name and address of one witness—Kathleen Kyriacou—and directed defendant to refer to plaintiffs' witness list.

About two months after discovery closed, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that it could not have been negligent per se because it salted and removed any snow or ice in the area of Nadia's fall later the same morning. Next, defendant argued that it could not have been negligent under general negligence law because any snow or ice on the sidewalk was open and obvious. Finally, defendant noted that the snow or ice was not effectively unavoidable because Nadia could have driven her car to the mailbox or she could have retrieved the mail later.

Ten days later, on January 13, 2020, plaintiffs noticed defendant and the trial court that they were going to depose Randy and Kathleen on January 20, 2020. That same day, in response to an e-mail from plaintiffs, defendant asked whether the depositions would be trial depositions. Plaintiffs responded that the depositions were "mainly to deal with [the] motion for [summary disposition]." That same day, defendant filed an objection to plaintiffs' notices of deposition and filed an emergency motion for a protective order, or to adjourn the depositions. Defendant asked the trial court to quash plaintiffs' notices of deposition for Randy and Kathleen and to disregard any input of these witnesses when considering defendant's motion for summary disposition. Defendant noted the discovery cutoff date had passed months ago and that plaintiffs had never disclosed in their responses to defendant's interrogatories the subject matter to which these witnesses would testify. The next day, plaintiffs filed supplemental answers to defendant's interrogatories. Specifically, plaintiffs supplemented their answers to interrogatories by explaining what plaintiffs expected Randy and Kathleen to testify.

Because plaintiffs refused to reschedule the depositions of Randy and Kathleen, in an ex parte motion, defendant moved the trial court to impose a temporary restraining order on plaintiffs from deposing Randy and Kathleen. The trial court granted defendant's ex parte motion and ordered plaintiffs not to depose Randy or Kathleen. Nevertheless, on January 20, 2020, plaintiffs had proceeded with the depositions of Randy and Kathleen.

Responding to defendant's motion for summary disposition, plaintiffs claimed that, at a minimum, there was a genuine issue of fact as to whether the sidewalk had been fit for its intended use. Plaintiffs argued that defendant had violated § 302.3 of the IPMC because defendant had failed to remove snow and ice from the sidewalk. Finally, as to their common-law claim, plaintiffs argued that the snow and ice on the sidewalk was not open and obvious because the snow and ice had been effectively unavoidable.

Plaintiffs also responded to defendant's motion for a protective order, arguing that the trial court should not disregard Kathleen's and Randy's depositions because the depositions were for plaintiffs' trial preparation. In so arguing, plaintiffs ignored that they had submitted Randy's and Kathleen's depositions with their response to defendant's motion for summary disposition.

The trial court granted defendant's motion for summary disposition. As a threshold matter, the trial court declined to consider the deposition testimony of either Kathleen or Randy, or their respective affidavits. The trial court also declined to consider the photographs that plaintiffs offered in their response to defendant's motion, as Randy had authenticated those photographs in his deposition. Addressing the merits of plaintiffs' claims, the trial court found that plaintiffs had failed to show there was any dangerous condition on defendant's property because the weather report plaintiffs offered showed that no snow had accumulated on the ground between March 3, 2019 and March 5, 2019. Further, the trial court held, even if it had snowed, any danger posed by the snow or ice on the sidewalk would have been open and obvious. Finally, the trial court rejected plaintiffs' argument that such danger was effectively unavoidable. The trial court reasoned that Nadia had no need to get the mail at that time—she could have waited until later. And Nadia did not have to use the sidewalk to walk to the mailbox—she had alternative routes available to her. This appeal followed.

Before addressing the merits, we note that plaintiffs ask us to strike exhibits C, D, E, and F in defendant's brief on appeal. Plaintiffs contend that those exhibits were not a part of the lower court record. Contrary to plaintiffs' contention, however, these exhibits were part of the lower court record. Exhibit C, plaintiffs' responses to defendant's interrogatories, were attached as Exhibit 1 to defendant's motion for protective order. Exhibit D, plaintiffs' witness list, is included in the lower court file. Exhibit E, the e-mail correspondence between plaintiffs' counsel and defendant's counsel, was attached as Exhibit 2 to defendant's motion for protective order. And Exhibit F, the trial court's order granting defendant's motion for a temporary restraining order, is in the lower court file.

## I. TRIAL COURT'S REFUSAL TO CONSIDER EVIDENCE

Turning now to the merits of plaintiffs' claims, plaintiffs first argue that the trial court abused its discretion in refusing to consider Randy's deposition and affidavit, and Kathleen's deposition and affidavit. Plaintiffs' reasoning is difficult to follow, but in essence, plaintiffs seem to argue that the trial court lacked the authority to refuse this evidence under the Michigan Court Rules in effect before January 1, 2020. We disagree.

We review decisions regarding sanctions for discovery violations for an abuse of discretion. *Jilek v Stockson*, 297 Mich App 663, 665; 825 NW2d 358 (2012) (citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). The interpretation of court rules is a question of law that this Court reviews de novo. *Rema Village Mobile Home Park v Ontwa Twp*, 278 Mich App 169, 171; 748 NW2d 896 (2008).

"A newly adopted court rule will not be applied to pending actions if a 'party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rules.' " *Ligons v Crittenton Hosp*, 490 Mich 61, 88; 803 NW2d 271 (2011), quoting *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 596 (1999). To the extent that the current version of MCR 2.302(E) differs from the prior version—MCR 2.302(E), as amended October 1, 2014, 497 Mich clxii-clxiii (2015)— plaintiffs could not have been expected to conform their conduct to the current version. Consequently, MCR 2.302(E), as amended October 1, 2014, 497 Mich clxii-clxiii (2015) would have applied from March 26, 2019 until January 1, 2020.

Nevertheless, the version of MCR 2.302(E) in effect before January 1, 2020, still imposed a duty on parties to supplement incomplete responses to requests for discovery to include information acquired later. MCR 2.302(E), as amended October 1, 2014, 497 Mich clxii-clxiii (2015 ) stated:

(E) Supplementation of Responses.

(1) Duty to Supplement. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information acquired later, except as follows:

(a) A party is under a duty seasonably to supplement the response with respect to a question directly addressed to

(i) the identity and location of persons having knowledge of discoverable matters; and

(ii) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.

(b) A party is under a duty seasonably to amend a prior response if the party obtains information on the basis of which the party knows that

(i) the response was incorrect when made; or

(ii) the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(c) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time before trial through new requests for supplementation of prior responses. [MCR 2.302(E), as amended October 1, 2014, 497 Mich clxii-clxiii (2015) (emphasis added)].

Unlike the current version MCR 2.302(E), this prior version does not explicitly state that a party must supplement a response to a discovery request if the party learns its response is incomplete. The current version of MCR 2.302(E)(1) states, in relevant part:

(a) In General. A party that has made a disclosure under MCR 2.302(A)—or that has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(i) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . . [MCR 2.302(E)(1)(a).]

Although the prior version does not explicitly state that a party must supplement a response to a discovery request if the party learns its response is incomplete, it does imply that a party must supplement a response that the party learns is incomplete. MCR 2.302(E)(1), as amended October 1, 2014, 497 Mich clxii-clxiii (2015), stated that "[a] party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information acquired later . . . ." MCR 2.302(E)(1), as amended October 1, 2014, 497 Mich clxii-clxiii (2015). Although the prior version of MCR 2.302(E)(1) does not explicitly mention anything about parties who have provided incomplete responses to discovery requests, it is a general principle of interpretation that the expression of one thing implies the

exclusion of others. See *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 261; 827 NW2d 379 (2012). This is commonly referred to as the doctrine of *expressio unius est exclusio alterius*. *Id*. "The doctrine characterizes the general practice that 'when people say one thing they do not mean something else.' " *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009), quoting *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990). Here, the prior version of MCR 2.302(E)(1)'s express reference to parties that have provided complete responses implies the exclusion of parties that have provided incomplete responses. Hence, this implies that a party who has responded to a request for discovery with a response that was incomplete when made is under a duty to supplement his or her responses to include information acquired later.

In this case, plaintiffs responded to defendant's interrogatories with incomplete responses. Specifically, in interrogatory no. 35, for each witness of which plaintiffs had knowledge, defendant asked plaintiffs to disclose whether the witness was an eyewitness to Nadia's fall, was a medical witness, or whether the witness had other knowledge relating to either the circumstances or facts regarding the incident. In response, plaintiffs provided Kathleen's name and address but nothing more. In interrogatory no. 39, for each witness on plaintiffs' witness list, defendant asked plaintiffs to disclose "the facts [the witness] will be called to provide testimony regarding . . . ." Plaintiffs responded "please refer to witness/exhibit list" but responded no further.

Accordingly, plaintiffs' response to this discovery request was incomplete, and plaintiffs had a duty to supplement their responses to these interrogatories. And they were required to do so "seasonably":

> (2) Failure to Supplement. If the court finds, by way of motion or otherwise, that a party has not seasonably supplemented responses as required by this subrule the court may enter an order as is just, including an order providing the sanctions stated in MCR 2.313(B), and, in particular, MCR 2.313(B)(2)(b). [MCR 2.302(E), as amended October 1, 2014, 497 Mich clxii-clxiii (2015).]

Plaintiffs did not supplement their responses to defendant's interrogatories until seven months after receiving them—and two months after the discovery cutoff date. Plaintiffs cannot contend that only then did they discover the facts of which Randy and Kathleen had knowledge. Randy is plaintiffs' son, and Kathleen is plaintiffs' neighbor who lives in the same building. Given that plaintiffs waited to supplement their responses until two months after discovery closed, and after defendant had already moved for summary disposition, the trial court did not abuse its discretion in concluding that plaintiffs had failed to "seasonably" supplement their responses.

Moreover, the trial court imposed an appropriate sanction in response to plaintiffs' failure to supplement their responses. Under MCR 2.302(E)(2), as amended October 1, 2014, 497 Mich clxii-clxiii (2015), "[i]f the court [found], by way of motion or otherwise, that a party ha[d] not seasonably supplemented responses . . . the court [could] enter an order as [was] just, including an order providing the sanctions stated in MCR 2.313(B), and, in particular, MCR 2.313(B)(2)(b). MCR 2.302(E)(2). Under MCR 2.313(B)(2)(b), as amended December 16, 2008, 482 Mich cxxii

(2009),[1] which was in effect before January 1, 2020, the trial court could enter "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence." MCR 2.313(B)(2)(b). Thus, the trial court was within its discretion to decline to consider Randy's deposition and affidavit and Kathleen's deposition and affidavit.

The trial court was also within its discretion to decline to consider this evidence under MCR 2.301(B)(3), which states "[a]fter the time for completion of discovery, a deposition of a witness taken solely for the preservation of testimony may be taken at any time before commencement of trial without leave of court." MCR 2.301(B)(3). Again, the expression of one thing implies the exclusion of others. Hence MCR 2.301's explicit reference to depositions taken solely for the preservation of testimony impliedly excludes depositions taken for other purposes, meaning plaintiffs were required to seek leave of court to depose Randy and Kathleen.

Finally, to the extent that plaintiffs argue the trial court did not give them an opportunity to be heard before it declined to consider their proffered evidence, this argument lacks merit. Defendant moved the trial court for a protective order, and plaintiffs were permitted to respond. Plaintiffs present no authority or argument explaining why this would have been an insufficient opportunity to be heard.

## II. MCL 554.139(1)

Plaintiffs next argue that there was a genuine dispute of material fact as to whether the sidewalk where Nadia slipped was fit for its intended use, and the trial court should not have dismissed their MCL 554.139(1) claim.

We review de novo a trial court's decision to grant summary disposition. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac*, 309 Mich App 611, 617; 873 NW2d 783 (2015). "A motion under MCR 2.116(C)(10) 'tests the factual support of a plaintiff's claim.' " *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013), quoting *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In considering a motion under MCR 2.116(C)(10), this Court must examine "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

Under MCL 554.139(1)(a), a landlord owes his or her tenant a duty to keep the premises and all common areas fit for the use intended by the parties:

---

[1] According to 482 Mich cxxii (2009), subsection (B) was not amended.

(1) In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties. [MCL 554.139(1)(a).]

For courts tasked with applying this language, our Supreme Court has provided the following analytical framework:

First, the court is to determine whether the area in question is a "common area." Then, the court is to identify the intended use of the common area. Lastly, the court must determine if there could be "reasonable differences of opinion regarding" whether the conditions made the common area unfit for its intended use. [*Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 289; 933 NW2d 732 (2019), citing *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 427-431; 751 NW2d 8 (2008).]

The issue in this case is whether there could be reasonable differences of opinion regarding whether the conditions of the sidewalk made it unfit for its intended use. The sidewalk here was located within the parameters of defendant's apartment complex and lead from apartment buildings to adjoining parking lots; thus, it was a common area. See *Estate of Trueblood*, 327 Mich App at 289-290; see also *Allison*, 481 Mich at 427 (defining "common areas" as used in MCL 554.139 as "those area of the property over which the lessor retains control that are shared by two or more, or all, of the tenants."). And, as this Court has already held, the intended use of such a sidewalk is "walking on it." *Id*. at 290.

Plaintiffs first argue the trial court never considered their claim that defendant violated its duty under MCL 554.139(1)(a). We disagree. Relying on the weather report that plaintiffs had provided, the trial court found that no snow had accumulated on the ground between March 3, 2019 and March 6, 2019. Although the trial court did not specifically say so, it is reasonably clear the trial court found this fact was dispositive of both plaintiffs' premises-liability claim and plaintiffs' claim under MCL 554.139(1)(a).

Next, plaintiffs argue there is a genuine issue of material fact as to whether the sidewalk was fit for its intended use because Raja testified that the entire sidewalk—from his and Nadia's apartment to the mailbox—was covered with ice. Again, we disagree.

To begin, plaintiffs here are complaining that the trial court relied on evidence that they themselves provided. "A party may not claim error 'premised on an error to which he contributed by plan or negligence.' " *Kern v Kern-Koskela*, 320 Mich App 212, 238; 905 NW2d 453 (2017), quoting *People v Bosca*, 310 Mich App 1, 29; 871 NW2d 307 (2015). Even so, plaintiff's evidence—namely the weather report—forecloses any issue of fact.

To be sure, this Court has held that if there is evidence that a sidewalk was "completely covered" with ice, then the sidewalk may have been unfit for its intended use. *Estate of Trueblood*, 327 Mich at 290-291. If a sidewalk were completely covered with ice, then the ice would be more than a "mere inconvenience." *Id*. at 290. "[A]nyone walking on a sidewalk completely covered in ice would be forced to walk on ice, and there is no way to simply walk around it." *Id*. at 291. Here, although his testimony was inconsistent, Raja did testify that the whole sidewalk was

covered in ice. But the documentary evidence—namely the weather report—patently contradicts his testimony. After all, the weather report states that only a total of 0.02 inches of snow fell from March 3, 2019 through March 5, 2019, and of the snow that fell, the report indicates that none of it accumulated on the ground. With this little snow fall, it would have been impossible for the entire sidewalk to have completely frozen over.

Of course, issues of witness credibility and what weight to assign a witness's testimony are typically issues for the fact-finder to resolve. See *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120, issued 11/5/2020); slip op at 11. Generally, courts may not weigh the evidence, and summary disposition is especially inappropriate where the resolution of a matter turns on the credibility of a witness. *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998). But there is an exception to this general rule: if a witness's testimony is irreconcilably contrary to unassailably clear and objective record evidence, or if a witness's testimony is intrinsically impossible or totally unbelievable, summary disposition may still be appropriate. *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); see also, *Anderson v City of Bessemer City, NC*, 470 US 564, 575; 105 S Ct 1504; 84 L Ed 2d 518 (1985) ("a witness's 'story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.' ").[2] This is a case in which this exception applies. Raja has told a story irreconcilably contrary to the weather report—clear and objective record evidence.

Plaintiffs have offered no legitimate reason to doubt the reliability of this report. Indeed, plaintiffs proffered this report in opposition to defendant's motion for summary disposition. On appeal, they now argue this report is inaccurate because this weather data was actually for Romulus and Belleville. But plaintiffs offer nothing to support this assertion. While the report does indicate that the Detroit Metropolitan Wayne County Airport Station recorded the data in the report, nothing in the report suggests that the data was limited to Romulus and Belleville only. And even if one were to accept plaintiffs' contention that the Detroit Metropolitan Wayne County Airport is about 20 miles from plaintiffs' apartment, plaintiffs assume without evidence that a weather station could not accurately record data for a location only 20 miles out. Next, plaintiffs point out that the weather report's representation that there were zero inches of precipitation is inconsistent with the report's other representation that there were multiple periods of "light snow" between March 3, 2019 and March 5, 2019. But plaintiffs fail to explain why this would mean the report is inconsistent. Just because there were periods of light snow does not necessarily mean that any snow accumulated.

---

[2] On issues of state law, United States Supreme Court precedent is not controlling but may be considered persuasive authority. See *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 283; 696 NW2d 646 (2005). Considering the purpose of MCR 2.116(C)(10)—like its analog under the Federal Rules of Civil Procedure—is to test whether there is legitimately a triable issue of fact, we find this precedent persuasive in this instance.

Given that the weather report directly contradicts Raja's testimony, and plaintiffs have offered no legitimate reason for us to doubt the report's accuracy, reasonable minds could not disagree: the sidewalk here was not completely covered in ice. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. Even though there may be some inconsistency between the weather report and Raja's testimony, it is not enough to transform into a genuine issue of material fact such that summary disposition would be precluded. Accordingly, plaintiffs failed to show that the sidewalk here was ever unfit for its intended use.

Finally, to the extent that plaintiffs argue that defendant breached its duty under MCL 554.139(1)(b), plaintiffs have abandoned this issue. In their brief on appeal, they state that defendant breached its duty under MCL 554.139(1)(b), but they offer no argument as to why or how. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

III. PREMISES LIABILITY

Last, plaintiffs argue that the trial court erred by granting defendant's motion for summary disposition on its premises-liability claim.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006), citing *Taylor v Laban*, 241 Mich App 449, 452; 616 NW2d 229 (2000). "The duty that a landlord owes a plaintiff depends on the plaintiff's status on the land." *Benton*, 270 Mich App at 440. A tenant is considered an invitee of a landlord. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). So under general negligence law, a landlord "owes a duty to [a tenant] to exercise reasonable care to protect the [tenant] from an unreasonable risk of harm caused by a dangerous condition on the land." *Id*. Absent special aspects, "this duty does not extend to open and obvious dangers." *Estate of Trueblood*, 327 Mich App at 285. And "[g]enerally, the hazard presented by snow and ice is open and obvious . . . ." *Id*. Thus, a landowner generally owes no duty to a tenant to warn of or remove snow or ice. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 694; 822 NW2d 254 (2012).

However, if an open or obvious hazard such as snow or ice is "effectively unavoidable," a landlord may have a duty to the tenant to warn of or remove it. See *Hoffner v Lanctoe*, 492 Mich 450, 463; 821 NW2d 88 (2012) ("This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*."). In *Hoffner*, our Supreme Court explained that "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard." *Id*. at 469. When a person has the opportunity to make an alternative decision to avoid an open and obvious icy condition, the "effectively unavoidable" exception does not apply. *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412-413; 864 NW2d 591 (2014) (holding that the ice on which the

-10-

plaintiff had slipped was not effectively unavoidable because the plaintiff consciously decided to put himself in a position where he would face the ice).

In this case, plaintiffs argue that Nadia had no opportunity to make an alternative decision to avoid walking on the allegedly ice-covered sidewalk. Citing this Court's decision in *Spigner v Yarmouth Commons Ass'n*, unpublished opinion of the Court of Appeals, issued September 30, 2014 (No. 315616), plaintiffs argue that people have a unique need to retrieve their mail. Thus Nadia's decision to retrieve her mail cannot be considered a choice. Also, plaintiffs argue that the sidewalk was the only way by which Nadia could access her mailbox. We disagree.

Assuming without deciding that people have a unique need to retrieve their mail that cannot be equated with a simple desire to avail oneself of products or services[3], plaintiffs' argument still fails—for Nadia had more than one way by which to access her mailbox. The mailbox in *Spigner* was completely surrounded by an embankment of snow, leaving the plaintiff in that case with no option but to confront it to retrieve her mail. See S*pigner*, unpub op at 2. In contrast here, Nadia had other options by which to access her mailbox. Perhaps most obviously, Nadia could have driven her car to the mailbox on her way out of the apartment complex. It is undisputed that Nadia had a pathway clear of ice or snow leading from her apartment to her car.[4] And even if Nadia would have had to get out of her car once pulled up to the mailbox, unlike in *Spigner*, there is also no evidence that the ground surrounding the mailbox was unfit for walking on. In their depositions, neither Raja nor Nadia mentioned anything about the ground surrounding the mailbox. True enough, Raja suggested that an inch-and-a-half of snow covered the ground, but an inch-and-half of snow is not enough to block access to a mailbox or to present an unreasonable risk of harm.

Therefore, the trial court correctly concluded that there was no genuine issue of material fact as to whether Nadia could have avoided walking on the allegedly ice-covered sidewalk.

## IV. CONCLUSION

In sum, the trial court correctly granted defendant's motion for summary disposition. The trial court acted within its authority under the court rules to disregard Randy's deposition and affidavit and Kathleen's deposition and affidavit. As to plaintiffs' premises-liability claim, any snow or ice on the sidewalk was open and obvious, and not unavoidable. As to plaintiffs' claim

---

[3] In *Spigner*, an embankment of snow had built up around the plaintiff's mailbox. *Spigner*, unpub op at 2. Thus, to retrieve her mail, the plaintiff had to confront the embankment of snow—for the snow pile blocked all access points to the mailbox. This Court noted that, even when a danger blocks all access points to a service or business, the danger is not effectively unavoidable when that service or business is nonessential. *Id*. at 8, citing *Hoffner v Lanctoe*, 492 Mich 450, 471-473; 821 NW2d 88 (2012). But this Court found that retrieving one's mail is essential, such that one has more than a "mere subjective desire or need" to access it. *Spigner*, unpub op at 8.

[4] And there is no evidence the parking lot was otherwise unfit for driving: viewed in a light most favorable to plaintiff, the evidence shows that—at most—there was an inch and a half of snow on the ground.

-11-

under MCL 554.139(1)(a), plaintiffs failed to show that a genuine issue of material fact exists as to whether the sidewalk was completely covered in ice.

Affirmed.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Thomas C. Cameron